**In the Matter of the Dependency and Neglect of S.L., H.L. and M.B., and Concerning their Mother L.B.**

**No. 14246.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 19, 1984.

Decided May 23, 1984.

---

Greg L. Peterson, Aberdeen, for appellant mother.

Daniel R. Moen, Aberdeen, for children.

Michael J. Williams, Asst. Atty. Gen., Pierre, for appellee State of South Dakota; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

MORGAN, Justice.

This is the second appeal by the mother, L.B. (L.B.), from the decisions of the trial court adjudicating her three children, S.L., H.L., and M.B. (children), dependent and neglected and terminating her parental rights. On the first appeal the case was remanded to the trial court with direction to enter findings of fact and conclusions of law on the dispositional hearing based upon the "clear and convincing evidence" standard required by *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). *See Matter of S.L.*, 330 N.W.2d 528 (S.D.1983). On remand L.B. petitioned the trial court for the opportunity to present additional evidence on her rehabilitation. The trial court denied the petition and entered revised findings of fact and conclusions of law from which L.B. appeals. We affirm.

The record discloses that these children have been in the system almost since birth. S.L., the oldest, was born May 24, 1978. There were protective service referrals and continuous services from the Department of Social Services (Department) since that time. The first petition for a declaration that S.L. was dependent and neglected was filed on June 5, 1979. Even before the petition S.L. was placed with her grandmother as a result of L.B.'s incarceration. The first adjudicatory hearing on a dependency and neglect petition involving all three children was held in July 1981, followed by a dispositional hearing in August 1981. The adjudicatory hearing resulted in a finding of dependency and neglect and the dispositional hearing resulted in an order giving Department legal custody of the children for six months while L.B. maintained physical custody. The dispositional order also required L.B. to undergo counseling, parenting classes and women's therapy. No appeal was taken from either of these decisions.

Approximately one month later, at 2 a.m., L.B. called her caseworker Sue Wein (Wein) and told her to pick up the children. When Wein arrived at the apartment she tried to remonstrate with L.B., who packed a bag of belongings and departed. The children were taken into protective custody by the Brown County Sheriff's Department and a detention hearing was held per SDCL 26–8–23.1, resulting in an order giving Department physical and legal custody for two weeks. The record is unclear at this point, but apparently the children were returned to L.B. on or before the expiration of the two-week period because in mid-October L.B. again requested foster care. Assistance with the children was needed while she was hospitalized for an emergency appendectomy. On this occasion, foster care lasted approximately a week, whereupon the children were again returned to L.B.

Within a day or two, the police were called to L.B.'s apartment where a violent fight was in progress involving one R.W. The record indicates that R.W. was not previously involved with L.B. but was look-

ing for someone else and threatening L.B.'s roommate, when L.B. injected herself into the altercation. R.W. was arrested and jailed. The following day, L.B. left the children with a babysitter while she ran some errands. She apparently learned that R.W. had been released from custody whereupon she forged a check, purchased a bus ticket to Sioux Falls, and fled town. After arriving in Sioux Falls, she called the babysitter and instructed him to call Department to again take the children. When Department was contacted, they picked up the children and placed them in foster care. The following day another detention hearing was held, resulting in an order giving Department legal and physical custody of the children for thirty days. Upon L.B.'s return from Sioux Falls, she again contacted Wein and requested return of the children. Wein refused to return the children because, in her opinion, the children were becoming emotionally damaged. A new dependency and neglect petition was thereafter filed, resulting in the proceedings from which this appeal arises.

The issues raised by L.B. on this appeal are virtually the same as those raised on the first appeal. Those issues have not been dealt with because of the remand occasioned by the deficient dispositional findings and conclusions.

■■■ L.B. first complains that the trial court erred in using a preponderance of the evidence standard at the adjudicatory hearing. It appears to us that this issue is frivolous. In the first place, the adjudicatory hearing was pre-*Santosky*, therefore, the preponderance of the evidence standard would have been adequate. A casual reading of the record discloses, however, that the trial court, rather than using a preponderance of the evidence standard, or even the stricter "clear and convincing evidence" standard of *Santosky*, employed the strictest standard possible and determined that the state had shown "beyond a reasonable doubt" that the children lacked parental care and were dependent and neglected.

■■■ The next issue is whether the trial court committed error in the January 5 and February 2, 1982, adjudicatory hearings by admitting evidence of events preceding the August 1981 order, which adjudicated and declared the children to be dependent and neglected. For this proposition, L.B. cites us to *Matter of N.J.W.*, 273 N.W.2d 134 (S.D.1978). That case, however, is distinguishable and cannot be relied upon here. In *N.J.W.*, the children were found not to be dependent and neglected in an earlier proceeding and the trial court's admission of evidence from a time prior to the earlier proceeding was an attempt to reconsider facts surrounding issues already litigated. In this case, however, the prior determination was that the children were dependent and neglected, nothing was being relitigated. The trial court merely looked at evidence viewed in making its original decision in order to broaden its focus beyond one incident and get the complete picture before reaching the same conclusion. *In Matter of S.S.*, 334 N.W.2d 59 (S.D.1983). Thus, the trial court's second decision adds to the finality of the first decision and the purpose for applying the doctrine of res judicata does not arise. *N.J.W., supra.* As we recently said in *S.S.*, 334 N.W.2d at 61:

> Termination of parental rights are serious matters which touch the basic fabric of our way of life—the family unit. The decision to terminate requires evidence of sufficient magnitude to convince the trial court that the best interests of the children require the breakup of the family unit. This decision cannot be made by focusing the court's attention to one incident while the full picture is ignored. Even if prior proceedings were not formally admitted at the hearing, we have said that "trial courts may take judicial notice of their own records or prior proceedings in the same case." *State v. Olesen*, 331 N.W.2d 75, 76 (S.D.1983) . . . .

■■■ As a third issue, L.B. alleges that the trial court erred by admitting evidence at the adjudicatory hearings that was outside the allegations of the petition. On this issue, L.B. relies on the due process re-

quirement presented in *N.J.W., supra.* The grounds upon which dependency and neglect are alleged are the only grounds which may be considered in a determination of dependency and neglect. *Id.* The petition filed by Department on December 10, 1981, reads:

> That said children lack proper parental care through the actions or omissions of their parent, L.B., who left them with a babysitter at 9:00 a.m., October 26, 1981, and called at 9:15 a.m. to state that she was not returning to pick up her children; that they should be placed with the South Dakota Department of Social Services. Her whereabouts were unknown at the time.

L.B.'s brief points out only two apparent instances of error; first, that the trial court admitted testimony regarding the alleged condition of the apartment and, second, that the trial court made findings regarding prior foster care.*

In reviewing the trial court's findings of fact, we see nothing regarding the alleged condition of the apartment; further, we presume that the trial court disregarded any testimony which was improper; therefore, we find no error in the first instance. *N.J.W., supra.*

The issue regarding admission of evidence on prior foster care, is disposed of by our disposition of the immediately preceding issue; we presume the trial court disregarded improper evidence. We also note that the trial court can take judicial notice of its files and records and that indeed at least two prior instances of court ordered foster care appear in the record. We, therefore, hold that the trial court did not err in this instance.

■ L.B.'s fourth issue asserts that the trial court's findings supporting its conclusions that the children are dependent and neglected are clearly erroneous. This court's standard of review is set out in two statutes. First, "[f]indings of fact shall not be set aside unless clearly erroneous,

and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." SDCL 15-6-52(a). Second, "[i]f the court finds that the allegations of the petition are supported ... by clear and convincing evidence in cases concerning neglected and dependent children, the court shall sustain the petition[.]" SDCL 26-8-22.10.

This court explained its application of the clearly erroneous standard in *In Re Estate of Hobelsberger,* 85 S.D. 282, 289, 181 N.W.2d 455, 459 (1970), as follows:

> In applying the clearly erroneous standard we must bear in mind that our function is not to decide factual issues de novo. The question for the appellate court is not whether it would have made the same findings the trial court did, but whether on the entire evidence it is left with a definite and firm conviction that a mistake has been committed.

In this case, the trial court viewed the evidence, listened to the testimony of the witnesses, determined that the evidence was sufficient to support the petition and adjudged the children dependent and neglected. After reviewing the record and giving proper deference to the trial court, we cannot say that the findings are clearly erroneous.

■ L.B.'s fifth contention is that the evidence in this case does not support a finding that L.B.'s parental rights should be terminated. She first argues that the trial court was constrained by the petition to limit its considerations to the events of October 26, 1981. She cites SDCL 26-8-22.5, which provides, in pertinent part: "At the adjudicatory hearing ... the court shall first consider only whether the allegations of the petition are supported ... by a preponderance of the evidence in cases concerning neglected or dependent children." The standard has been raised to "clear and convincing evidence" by *Santosky, supra* and *S.L., supra,* and has now been codified

---

* We note that the brief also attempts to relate this error to dispositional findings, but we find that wholly immaterial to this consideration.

by the 1983 amendment to SDCL 26–8–22.-8. We note, however, that the statute points to the *adjudicatory* hearing. It is SDCL 26–8–22.11 which refers to the evidence at dispositional hearings. This statute requires that

> [a]fter making an order of adjudication, the court shall hear evidence on the question of the proper disposition best serving the interests of the child and the public.
>
> Such evidence shall include, but not necessarily be limited to, the social study and other reports.

As we pointed out in our discussion of the second issue, the trial court may take judicial notice of records and prior proceedings in the dispositional phase.

■ L.B. next suggests that the trial court failed to consider less restrictive alternatives. After an examination of the findings of fact and conclusions of law entered by the trial court upon remand we disagree. Conclusion of Law IX states: "The termination of parental rights of L.B. is the least restrictive remedy available to the court which would be in the best interests of the above named children"; Conclusion of Law X states "that no remedy short of termination of parental rights would sufficiently protect the physical and mental health of the above named children because all available services have been attempted"; and, Conclusion of Law XI states that "the court finds beyond a reasonable doubt that it is in the best interests and welfare of the above children to terminate all of the parental rights of L.B."

"While the fundamental nature of parents' rights to their children mandates at least a reasonable effort to aid the parents, termination of parental rights is justified when attempts to assist a parent in providing better care for the child are unsuccessful." *Matter of S.A.H.*, 314 N.W.2d 316, 317 (S.D.1982) (citation omitted); *Matter of R.Z.F.*, 284 N.W.2d 879 (S.D.1979); *In Matter of C.E. and D.E.*, 283 N.W.2d 554 (S.D. 1979). The circuit court in this case concluded that termination of L.B.'s rights is the least restrictive remedy available and is in the best interests of the children.

Without going into detail, we find the findings of fact to be generally supported by the evidence in the record and hold that the findings clearly support the conclusions of law cited above. On remand, the trial court cited the mandate for application of the "beyond a reasonable doubt" standard found in Section D.3 of the Indian Child Welfare Act and reviewed all evidence and testimony presented at the hearing under that standard. Use of the higher standard leaves this court little room to doubt the sufficiency of the evidence in this case.

■ The sixth issue presented in this appeal is whether the trial court committed error by admitting hearsay evidence of L.B.'s failure to attend therapy sessions at the Northeastern Mental Health Center. Error is not presumed on appeal. *Alberts v. Mutual Service Casualty Insurance Co.*, 80 S.D. 303, 123 N.W.2d 96 (1963). L.B. has the burden of proving prejudicial error and must establish from the record that under the evidence presented the trier of fact might and probably would have returned a different verdict if the alleged error had not occurred. *Dwyer v. Christensen*, 77 S.D. 381, 92 N.W.2d 199 (1958). The circuit court found in its dispositional findings of fact filed April 12, 1983, "that the court has limited its consideration to those documents and reports that have been filed with the court." Unless this finding is proven clearly erroneous, L.B. cannot show prejudicial error.

■ We consider the two other issues raised by L.B. to be utterly frivolous. First she contends that the court lacked jurisdiction because the notice provided for the January 5, 1982 adjudicatory hearing set the hearing for 10 a.m. and it was rescheduled for 3 p.m. without service of further notice. On this we merely note that L.B. appeared at the 3 p.m. hearing and failed to object in any manner. Obviously no prejudice can be shown. The other frivolous issue she attempts to raise is based upon the trial court's failure to appoint legal counsel for one of the fathers.

L.B. has no standing to object to the failure of the trial court to appoint legal counsel for another party.

Finally, L.B. asserts that the circuit court erred when it entered the dispositional findings of fact, conclusions of law and order upon remand without providing her an opportunity to present additional evidence or to object to proposed findings and conclusions. We note that this case was only remanded for application of the proper standard of review to the evidence already gathered. Nothing more was required, nor did we in our remand direct that additional evidence be heard as we have in some cases.

L.B. further relies upon SDCL 15–6–52(a), which provides that a court shall not sign any findings in cases tried without juries until five days after service of the proposed findings, during which time the parties may submit objections and proposals. Reliance upon this statute is misplaced in this situation in that the law was fully complied with when the original dispositional order was issued. L.B. submitted two alternative orders to the court and both were denied. She had ample opportunity to object to the original dispositional order which, while not identical, had substantially the same content and the exact effect as the dispositional order issued on remand. L.B. cannot complain of inadequate notice or insufficient opportunity to be heard.

SDCL 15–6–52(a) requires that proposed findings and conclusions be served on all parties, after the period for objection and proposals "the court shall make or enter such findings and conclusions as may be proper." *People In Interest of T.C.*, Etc., 278 N.W.2d 452 (S.D.1979). L.B. was presented with the original proposed findings, conclusions and decree and was allowed to object and present her own proposals; the trial court is not required to serve its final decision on the parties before signing and filing it. *T.C., supra.* In the absence of a showing to the contrary, this court assumes the circuit court acted within its jurisdiction; the appellant must show

the alterations in the findings and conclusions and their prejudicial effect. *T.C., supra.*

We affirm the trial court's order terminating L.B.'s parental rights.

FOSHEIM, C.J., and WOLLMAN and DUNN, JJ., concur.

HENDERSON, J., concurs specially.

HENDERSON, Justice (specially concurring).

As I am unable to sift out the germane from the ungermane in the majority opinion regarding the standard of proof and the review thereof interwoven throughout the writing, and as I believe that it is vital that a clear picture evolve from this litigation, I am compelled to write specially.

### FIRST

The mother's parental rights concerning three children were terminated on March 15, 1982. On appeal, this Court reversed the Dispositional Order and remanded the case for findings of fact and conclusions of law based upon a standard of clear and convincing evidence. This pertained to the Dispositional Order only. *Matter of S.L.*, 330 N.W.2d 528 (S.D.1983); *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). There was no appeal on the Adjudicatory Order. I have reached back and reviewed the briefs and showing of the mother, State, and children in *S.L.*, 330 N.W.2d 528, and not one hint or advocacy was ventured concerning the fact that these children were Indian children and that L.B. was an Indian mother. It is little wonder that this Court sent the case back under a clear and convincing standard of proof.

### SECOND

Upon remand, the trial court formally entered Findings of Fact, Conclusions of Law, and Order terminating the mother's rights based upon a standard of reasonable doubt. This standard was used because the trial court found that the mother was

one-half blood Indian and eligible for membership in the Standing Rock Tribe. The trial court further found that this case involves Indian children and the mandates of the Indian Child Welfare Act must be complied with. A standard of proof beyond a reasonable doubt is required for termination of parental rights to an Indian child. *See Matter of K.A.B.E.*, 325 N.W.2d 840, 843–44 (S.D.1982); 25 U.S.C.A. § 1912(f) (Supp.1981).

### THIRD

Notice of these proceedings was given to the Standing Rock Indian Tribe, with which the mother had affiliation, advising the Tribe of its rights to intervene in the State action or to request a transfer to the children's tribal court. The Standing Rock Tribe elected to neither intervene nor request a transfer. Thus, the matter continued in state court. It appears, therefore, that the Indian Child Welfare Act, and the burden of proof thereunder, was complied with and met, and the clear and convincing standard of proof, with respect to the termination of parental rights in these Indian children, is inapposite.