371 N.W.2d 345 (1985)
In the Matter of C.J.H., J.J.H., and G.J.H., Alleged Dependent and Neglected Children and Concerning G.H. and C.H., Parents.
Nos. 14745, 14765.
Supreme Court of South Dakota.
Argued May 20, 1985.
Decided July 17, 1985.
*348 James D. Taylor of Tinan, Padrnos, Smith & Taylor, Mitchell, for Children, appellees.
Janice C. Godtland, Asst. Atty. Gen., Pierre, for appellee South Dakota Dept. of Social Services; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.
Steven J. Bucher of Miller & Bucher, Plankinton, for appellant G.H., Father (# 14745).
Robert Swank of Hanson, Stiles, Anderson & Swank, Mitchell, for appellant C.H., Mother (# 14765).
HENDERSON, Justice.
G.H. (father) and C.H. (mother), appellants, appeal from an order terminating their parental rights over C.J.H., J.J.H., and G.J.H. (children). We affirm.
Appellants are divorced and have three daughters ranging in age from ten to six. Father had custody of the children pursuant to the Decree of Divorce. Mother is mentally disturbed and a self-confessed alcoholic. Father is a talented and industrious man who leads a very independent life-style. He is suspicious and distrusts the aid and advice offered by the Department of Social Services (Department). Appellants' marriage and relationship was fraught with violence, spousal abuse, alcohol consumption, and separations, but the children were never beaten or the center of this violence.[1] This family unit has been the object of many social and community help organizations and has been involved with the Department since at least July 1978.
In October 1983, after being released from a treatment program for chronic alcohol addiction and related physical and psychological problems, mother returned to Letcher, South Dakota, to live with father and the children. On December 30, 1983, father became extremely angry because he thought the children had plugged up the sewer system. Father, thereafter, left the home. Upon his departure and fearing he would hurt them, mother and the children left the home and went to the Mitchell Police Department. These events transpired in the early evening and the temperature was five to ten degrees below zero. The children, although clad in winter coats, were not wearing underwear or socks. The underwear was saved to wear to school. One child had a large hole in her boot.
That night, the children were taken into the custody of the Department and on January 3, 1984, the Department filed a petition alleging them to be dependent and neglected children.[2] An emergency hearing was conducted that same day and temporary custody was awarded to the Department.
The adjudicatory hearing was scheduled for February 3, 1984. On February 2, counsel for mother made a motion for continuance over the telephone. It appears mother had not contacted counsel for eighteen days and had been on an alcoholic binge and had been found by the police at her lawyer's request only the day before. She was in the Mitchell Area Alcohol and Drug Referral Center for detoxification and, according to her counsel, was not fully capable of understanding and not ready to participate in the hearing. Counsel asserted that mother would be denied due process if the hearing was not continued. The trial court denied the motion because 1) mother's incapacity was self-induced and thus not the typical case of a party being ill through no fault of their own; 2) the burden *349 rests on the parties to insure their availability at the time of the hearing; and 3) mother's rights were fully protected by counsel.
After the examination of three witnesses during the adjudicatory hearing, appellants admitted the allegations of the petition. The trial court found the children to be dependent and neglected and the dispositional hearing was begun. Neither appellant appeals the trial court's dependency and neglect determination. After the examination of several witnesses, the dispositional hearing was rescheduled.
On April 2, 1984, two days before the scheduled continuation of the dispositional hearing, mother moved the trial court for an order requiring father to submit to a mental examination under SDCL 15-6-35(a). In support of the motion, mother asserted that all parties' mental conditions were in controversy, that all had been examined except father, and that such information was necessary for the trial court to determine the children's best interests. The trial court granted the motion, ordered the examination, and rescheduled the dispositional hearing. The dispositional hearing was continued and finally concluded on April 25, 1984. In his closing argument to the trial court, the State's Attorney admitted that he did not believe termination was the least restrictive means or that the parental rights of either appellant should be terminated.
The trial court, however, concluded that termination of father's and mother's parental rights to be the least restrictive alternative and in the children's best interests. It thereupon vested legal custody and care in Department. It is from the order terminating parental rights that appellants now appeal. Appellants' briefs present seven issues and we address them seriatim.

I.
Mother initially claims the trial court abused its discretion by denying her motion for a continuance and thereby prejudiced her fundamental right to due process. We disagree.
The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will not be disturbed upon appeal unless there has been a clear abuse of discretion. State v. Rosales, 302 N.W.2d 804, 805-06 (S.D. 1981). Here, mother voluntarily imbibed alcohol over several days' time until she reached the point of requiring admission to an alcohol treatment program to detoxify herself. There is no contention that she was unaware of the date of the adjudication hearing. All other parties were prepared to proceed; mother was represented by counsel; and the children had already been in the custody of the Department for one month. Any impairment of mother's right to participate in the adjudicatory hearing was of her own accord. Under these circumstances, the trial court did not abuse its discretion in denying a continuance. See Cleeland v. Cleeland, 249 N.C. 16, 105 S.E.2d 114 (1958); Anderson v. Anderson, 78 Pa.D. & C. 335 (1951); Ramsey v. Bird, 170 S.W. 1075 (Tex.Civ.App. 1914).

II.
Father's first claimed error concerns the order requiring him to submit to a mental examination. This order was based on SDCL 15-6-35(a). Initially, father argues the trial court was without power to order the examination because civil discovery rules and statutes are not applicable to dependency and neglect proceedings because these are quasi-criminal and not civil in nature. This contention, however, is without merit.
Procedures determining the custody of dependent children are not criminal, Kent v. United States, 383 U.S. 541, 554-55, 86 S.Ct. 1045, 1054, 16 L.Ed.2d 84, 93-94 (1966), are not quasi-criminal, In re Guisti, 51 Nev. 105, 110, 269 P. 600, 601 (1928), but instead constitute a civil action, Board of Children's Guardians v. Gioscio, 210 Ind. 581, 585, 4 N.E.2d 199, 201 (1936), or a special proceeding of a civil nature, In re R. Y., 189 N.W.2d 644, 650-51 *350 (N.D.1971). See also, 43 C.J.S. Infants § 50 (1978). The Rules of Civil Procedure are used in all dependency and neglect adjudicatory hearings, Matter of V.D.D., 278 N.W.2d 194, 196 (S.D.1979), and all other hearings under SDCL ch. 26-8
shall be conducted under such rules and regulations as the court may prescribe and designed to inform the court fully as to the exact status of the child and to ascertain its history and environment and the past and present physical, mental, and moral condition of the child, and of its parents....
SDCL 26-8-30. Trial courts are empowered by SDCL 15-6-35(a) to order a mental examination in child custody cases when such is in controversy and good cause therefor is shown. See In re Marriage of Bingman, 209 N.W.2d 68, 71 (Iowa 1973), and Moninger v. Moninger, 202 Neb. 494, 500, 276 N.W.2d 100, 104 (1979). We deem this statute particularly applicable in dispositional proceedings in dependency and neglect actions and the trial court is empowered thereby to order a mental examination. The grant or denial of such a motion is, however, within the trial court's discretion.
Father next contends on this issue that if the trial court has discretion to order a mental examination, that discretion was abused because good cause was not shown. We disagree.
In the dispositional phase of dependency and neglect proceedings, a parent's fitness is in controversy and prior to the motion requesting a mental examination of father, testimony had been adduced which showed a violent and unstable family situation. All parties to this family and to this action had been examined except father. In order to determine the disposition which would be in the children's best interests, it was necessary for the trial court to have information concerning father's mental stability. Good cause existed for the issuance of the order and the trial court did not abuse its discretion.
Finally, father contends the trial court abused its discretion by ordering the examination to be conducted by a person other than a licensed physician. Father, however, did not object to the trial court's selection and, in fact, acquiesced in the person appointed. Having failed to object at the trial level, father cannot now be heard to complain. Weaver v. Boortz, 301 N.W.2d 673 (S.D.1981).

III.
Father's second claimed error is that certain exhibits admitted into evidence during the dispositional proceedings should not have been admitted because they lacked sufficient trustworthiness to meet the requirements of SDCL 19-16-10, which admits certain business records over hearsay objections. Under SDCL 19-9-14(7), however, the rules of evidence contained in SDCL chs. 19-9 to 19-18, inclusive, do not apply in dispositional hearings in juvenile court. Since SDCL 19-16-10 is one of the rules of evidence not applicable in dispositional hearings, father's contentions are not sustainable.

IV.
Father's next individual assignment of error is that the trial court erred when it based its decision to terminate his parental rights upon grounds not alleged in the petition, ex parte letters from Department personnel, and statutory grounds not in existence at the time of the dispositional hearing.
While this Court has held "that the grounds upon which the dependency or neglect is alleged are the only grounds which may be used to reach a determination of dependency or neglect[,]" Matter of N.J.W., 273 N.W.2d 134, 139 (S.D.1978), we have not held that the allegations of the petition constrain the trial court's inquiry in the dispositional hearing. Matter of S.L., 349 N.W.2d 428, 432-33 (S.D.1984). During the dispositional hearing, the trial court shall examine evidence concerning the disposition which best serves the children's and the public's interests and this evidence shall include, but is not limited to, *351 the social study and other reports. SDCL 26-8-22.11. If supported by this evidence, the trial court's decision to terminate parental rights can be based on conduct, omissions, or circumstances other than those alleged in the dependency and neglect petition. The trial court must examine the complete picture and not focus on just one incident. Matter of S.S., 334 N.W.2d 59, 61 (S.D.1983). The trial court did not therefore err by basing its decision to terminate on circumstances in addition to those alleged in the petition.
As for the ex parte letters and the new statutory grounds, these letters concerned visitation problems and were precipitated by father's personal ex parte telephone communication with the trial judge. Having invited the error, assuming one exists, appellant cannot now complain. Drier v. Perfection, Inc., 259 N.W.2d 496, 507 (S.D.1977). Further, the trial court found the allegations of the petition to be supported by clear and convincing evidence. Based on the evidence produced during the dispositional hearing, the trial court decided it was in the best interests of the children to terminate appellants' parental rights. Even assuming, arguendo, that the trial court erred in considering new statutory factors, i.e., emotional harm, during the dispositional phase, the trial court's decision is supported by permissible considerations, namely, lack of proper parental care and an environment injurious to welfare. The error, if any, is not prejudicial.

V.
Father's final claim of error is that the State should not have been allowed to participate in the appeal because the termination order was adverse to it and it failed to file a Notice of Appeal or Review. Father raises this contention because in the closing comments in the dispositional hearing, the State's Attorney stated that he did not believe termination was the least restrictive alternative or that either appellants' parental rights should, in fact, be terminated. The Department's position, however, was that appellants' parental rights should be terminated. A Notice of Appeal or Review would not have to be filed unless the State sought to alter a judgment adverse to it. These judgments were not adverse to the State. Even assuming the trial court's order to be adverse to the State due to the State's Attorney's comments, nothing precludes the State from now seeking to uphold the trial court's termination order on appeal. The State's appellee brief was properly filed.

VI.
Appellants both contend that the trial court erred by failing to enter a final appealable dispositional order within three months of the beginning of the dispositional phase of the case. The dispositional hearing commenced on February 3, 1984, concluded on April 25, 1984, and Findings of Fact, Conclusions of Law, and an Order Terminating and Transferring Parental Rights were entered on September 25, 1984. SDCL 26-8-23 provides:
At any time after the filing of the petition and pending the final disposition of the case, the court may continue the case from time to time and may allow the child to remain in possession of its custodian or in its own home subject to the friendly visitation of a probation officer, or it may order the child to be placed in the custody of a probation officer of the court, or of any other suitable person appointed by the court, or to be kept in some suitable place provided by the city or county authorities. Such continuation shall extend no longer than three months.
Appellants assert that SDCL 26-8-23 was intended by the legislature to require the completion of the dispositional hearing and the entry of a final appealable order within three months' time. With this contention, we disagree.
SDCL 26-8-22.10 and SDCL 26-8-22.13 empower the trial court to continue the dispositional hearing, either on its own motion or on the motion of any interested party. SDCL 26-8-23, as stated above, provides that no continuation shall extend *352 longer than three months and this Court has held this provision of SDCL 26-8-23 to be applicable only in the dispositional phase of these cases. In re T.L.J., 303 N.W.2d 800, 806 (S.D.1981). To read this provision to be a requirement that the dispositional hearing must be conducted, concluded, and a final appealable order issued therefrom within a three-month time span, is to read an onerous time limitation into the statute which we believe the legislature did not intend and which we refuse to do. The determination of the proper disposition of children adjudged dependent and/or neglected is an important decision not to be made in haste. We read the three-month limitation provision of SDCL 26-8-23 to be a limitation on the length of time between proceedings in the dispositional phase of such cases. Although trial courts should enter their dispositional orders as quickly as careful deliberation will permit, so as not to leave the children and the parents in an extended state of limbo, SDCL 26-8-23 in no manner requires these findings, conclusions, and orders to be entered within three months of the beginning of the dispositional hearing.
Appellants next contend on this issue that the trial court's order terminating their parental rights was not entered at a time when the evidence was "sufficiently fresh so as not to leave the circumstances of parent and child at the time the decree is entered to speculation." In re T.M.T., 273 N.W.2d 199, 200 (S.D.1979). In T.M.T., however, the decree was entered some thirty months after the conclusion of the dispositional hearing, whereas here, the order was entered within five months. This is not such an amount of time so as to allow the evidence presented at the dispositional hearing to grow stale. This case is clearly factually distinguishable from the situation addressed in T.M.T.

VII.
Appellants' last combined contention is that termination was not the least restrictive alternative nor was such a decision supported by clear and convincing evidence. Appellants, in their individual briefs, each argue that a lesser restrictive alternative was available to the trial court, to-wit, award him or her custody and not the other parent. Our task, however, is not to decide such factual issues de novo. Matter of D.H., 354 N.W.2d 185, 188 (S.D. 1984). Our task, on appeal, is to
determine whether the court erred in concluding, based on the findings of fact resulting from the dispositional hearing, that there was available no narrower or less restrictive means of providing for the best interests and welfare of the children than to terminate appellants' parental rights.
Matter of N.J.W., 273 N.W.2d at 140. Based upon our review of the record, we conclude the trial court did not err.
As concerns the mother, the trial court found and she admitted to being a chronic alcoholic and incapable of caring for her children. The trial court also found the mother to be mentally disturbed; to lack sufficient parenting skills; to have no other family that could properly care for the children; and to have received assistance and failed to improve. Upon a review of the record, such findings are supported by clear and convincing evidence in the form of admissions, exhibits, and testimony from mental health professionals, Court Services personnel, and Department of Social Services personnel. Under these circumstances, no least restrictive alternative was available and the trial court's termination of mother's parental rights is not in error.
As concerns the father, the trial court found him to be mentally ill;[3] to be prone to violence; to have consistently refused assistance; to have no other family to care for the children; to not be a fit and proper parent; and to lack sufficient parenting skills. Again, upon a review of the *353 record, such findings are supported by clear and convincing evidence in the forms alluded to above. Additionally, the trial court found the children's environment to be injurious to their welfare and based on these circumstances, no lesser restrictive alternative, short of termination of father's parental rights, was available to the trial court and its decision in this regard is not in error.
The order terminating both parental rights is affirmed.
FOSHEIM, C.J., WOLLMAN and MORGAN, JJ., and McKEEVER, Circuit Judge, concur.
McKEEVER, Circuit Judge, sitting for WUEST, Acting Supreme Court Justice, disqualified.
NOTES
[1] The violence between father and mother included at least one occasion where father fired a shot at mother. On another occasion, he burned her clothes and chased her with a butcher knife. One child, in a violent episode, did receive a shove with a foot.
[2] This was the second dependency and neglect petition filed concerning these children and the third requested by the Department. The first such petition never came up for hearing. The present petition alleged that the children were dependent and neglected in that they lacked "proper parental care through the actions or omissions of their parents ... and whose environment is injurious to their welfare[.]"
[3] This finding arose as an adjunct to the ordered submission of the father to a mental examination. A licensed clinical psychologist at the doctoral level made a clinical diagnosis of passive-aggressive personality disorder with prominent paranoid schizophrenic features.