**PEOPLE of the State of South Dakota in the Interest of H.M. and S.M., Minor Children, and Concerning D.M., P.M., and the Department of Social Services.**

Nos. 17096, 17145.

Supreme Court of South Dakota.

Considered on Briefs April 24, 1991.

Decided Aug. 14, 1991.

Roger A. Tellinghuisen, Atty. Gen., Joan P. Baker, Asst. Atty. Gen., Pierre, for appellee.

William E. Anderson, Belle Fourche, for H.M. and S.M.

William A. Delaney III, Deadwood, for D.M.

Randall L. Macy, Belle Fourche, for P.M.

WUEST, Justice.

D.M. (Father) and P.M. (Mother) were married in December 1983 after the birth of their first daughter, H.M. The couple had a second daughter, S.M., born in August 1985. Their marriage was marked by repeated separations and reconciliations and, generally, was unstable.

In August 1987, Mother became ill and left the family home to live in the home of her boyfriend's parents. Father and the two girls continued to live in the family home until February 1988, when they moved to Vale, South Dakota. Upon arriving in Vale, Father rented a dwelling without adequate cooking, refrigeration or plumbing facilities. In May 1988, father rented a trailer home with adequate facilities.

While living with Father, the children were often dirty and had clothing that was too small and not warm enough for winter and early spring. Father often left the children with babysitters for many hours. The quality of the babysitting was good, but Father sometimes neglected to inform the babysitter of where he was going and when he would be returning. Father also neglected to provide the children adequate clothes and food while in the care of the babysitter. On one occasion, Father told the babysitter he would be home by 10:00 p.m., but did not return until the next morning. On another occasion, Father left the children with the babysitter for several days.

The South Dakota Department of Social Services (Department) received referrals in April and May 1988 which indicated the children were being neglected. On June 3, 1988, the Department took the children into protective custody. Pursuant to a court order, the Department was granted temporary legal custody of the girls and Mother was granted physical custody. A dependency and neglect petition was not filed immediately, however, because both parents agreed to cooperate with the Department.

On August 2, 1988, a dependency and neglect petition was filed against Father, but not Mother. While a hearing on the petition was pending, S.M. was paddled by Mother's boyfriend and suffered extensive bruising on her behind. This matter was raised at the adjudicatory hearing held September 15–16, 1988.

At the close of the hearing the State moved to amend the dependency and neglect petition to include Mother. The amendment was permitted over Mother's objection. Mother then moved for a continuance of the hearing to allow her time to prepare and present a defense. The trial court denied this motion and adjudicated the children dependent and neglected as to both Father and Mother.

After numerous dispositional hearings, the pertinent facts of which we will detail later, the parental rights of Mother and Father were terminated. Both parents appeal this decision and we have consolidated their appeals. Mother and Father each raise three issues, two of which are the same:

(1) Whether the trial court's determination of dependency and neglect is supported by clear and convincing evidence; and

(2) Whether the termination of Mother's and Father's parental rights was the least restrictive alternative.

Father raises the issue:

(3) Whether, during the dispositional phase of these proceedings, the trial court properly admitted certain hearsay allegations of sexual abuse of the children by Father.

Mother raises the issue:

(4) Whether the trial court erred in denying Mother's motion for a continuance of the adjudicatory hearing.

We will first address Mother's appeal, then Father's. Because we reverse the trial court's decision in Mother's case on the continuance issue, we need not reach the remaining issues raised by Mother.

## MOTHER'S DENIED CONTINUANCE

■ Pursuant to SDCL 26–8–22.6:

The court, on the motion of any interested party or on its own motion, may order the petition to be amended to conform to the evidence.

*If the amendment results in a substantial departure from the original allegations in the petition, the court shall continue the hearing on the motion of any interested party,* or the court may grant a continuance on its own motion, if it finds it to be in the best interests of the child or any other party to the proceeding.

SDCL 26–8–22.6 (emphasis added). Clearly, the amendment of the petition to include Mother was a substantial departure from the original petition. It added *another party* to the petition and effectuated an adjudication of that party's rights in the matter.

Under these circumstances, the command of SDCL 26–8–22.6 is clear: "[T]he court *shall continue the hearing* on the motion of any interested party[.]" (Emphasis added). The language of this provision is mandatory; it relates to matters of substance, as opposed to procedure. *See Chicago & N.W. Ry. Co. v. Buckingham Trans. Co. of Colo.*, 69 S.D. 1, 5 N.W.2d 729 (1942); *Bon Homme County Farm Bureau v. Bd. of Com'rs of Bon Homme County*, 53 S.D. 174, 220 N.W. 618 (1928). *See generally* 73 Am.Jur.2d, Statutes § 22; 2A Sutherland Stat.Constr., § 57.03, 57.11. It is clearly intended to avoid the type of prejudice which was occasioned upon Mother. Mother was not given notice by the petition that her parental rights were being adjudicated at the hearing, and when, after the fact, it was determined her parental rights were at issue, the trial court denied her any opportunity to present evidence in support of her position. This was prejudicial error. SDCL 15–6–61. We reverse the determination that H.M. and S.M. are dependent and neglected as to Mother and the termination of Mother's parental rights.

## DEPENDENCY AND NEGLECT AS TO FATHER

The trial court found that S.M. and H.M. were dependent and neglected as to Father. Father challenges the trial court's findings as clearly erroneous. As stated in In re Interest of M.K., our standard of review is set forth in two statutes:

First, "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." SDCL 15–6–52(a). Second, "[i]f the court finds the allegations of the petition are supported ... by clear and convincing evidence in cases concerning neglected and dependent children, the court shall sustain the petition[.]" SDCL 26–8–22.10.

*In re Interest of M.K.*, 466 N.W.2d 177, 185 (S.D.1991) (*quoting Matter of S.L.*, 349 N.W.2d 428, 432 (S.D.1984)). *Accord Matter of D.H.*, 354 N.W.2d 185 (S.D.1984). Thus, "we must determine whether the trial court was clearly erroneous in finding the evidence supporting termination was clear and convincing." *Id.* (*quoting Matter of S.S.*, 334 N.W.2d 59, 61 (S.D.1983)).

In applying the clearly erroneous standard we must bear in mind that our function is not to decide factual issues de novo. The question for the appellate court is not whether it would have made the same findings the trial court did, but whether on the entire evidence it is left with a definite and firm conviction that a mistake has been committed.

*Id.* (*quoting Matter of S.L.*, 349 N.W.2d at 432).

■ The evidence at the adjudicatory hearing revealed that while residing with Father, the children lived in unsanitary conditions and were not properly clothed or fed. They were left with babysitters for an often undisclosed and inordinate amount

of time, and without adequate food or clothing. The children were hungry and ate substantial quantities of food while in the care of babysitters. Several witnesses at the hearing testified to these facts, including Father's babysitter, the babysitter's father and friend, and Father's landlord. Although Father's testimony conflicted with the testimony of these witnesses, it is the function of the trial court to judge the credibility of the witnesses. We hold the trial court's findings are not clearly erroneous.

## HEARSAY TESTIMONY AGAINST FATHER

During the dispositional hearing of June 27, 1989, the State, over Father's objection, presented hearsay testimony that Father had sexually abused the girls. The hearsay testimony was elicited through certain social service workers and a mental health professional who employed anatomically correct dolls when interviewing the children. This hearsay testimony was critical to the trial court's decision to terminate Father's parental rights. In issuing its decision from the bench, the trial court indicated that termination of Father's rights would be inappropriate if not for the sexual contact, but because of this behavior, the court had no recourse other than termination.

On appeal, Father contends the admission of this evidence was in error because the trial court did not follow the procedure outlined in SDCL 19–16–38, which provides:

A statement made by a child under the age of ten describing any act of sexual contact or rape performed with or on the child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings against the defendant or in any proceeding under chapter 26–8 in the courts of this state if:

(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2) The child either:

(a) Testifies at the proceedings; or

(b) Is unavailable as a witness.

However, if the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.

No statement may be admitted under this section unless the proponent of the statement makes known his intention to offer the statement and the particulars of it, including the name and address of the declarant to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet the statement.

SDCL 19–16–38. In 1987, the legislature amended this statute by adding the language "or in any proceeding under chapter 26–8." * 1987 S.D.Sess.Laws. ch. 157. However, the legislature did not and has not amended SDCL 19–9–14(7), which provides that the evidentiary rules contained in SDCL ch. 19–16 do not apply in "[d]isposition hearings in juvenile court."

 In determining legislative intent, we must assume the legislature, in enacting a provision, has in mind previously enacted statutes relating to the same subject matter. *In re Estate of Smith*, 401 N.W.2d 736, 740 (S.D.1987); *State v. Feiok*, 364 N.W.2d 536, 539 (S.D.1985); *State v. Chaney*, 261 N.W.2d 674, 676 (S.D.1978). Where possible, all provisions within statutes must be given effect. *Beitelspacher v. Winther*, 447 N.W.2d 347, 351 (S.D.1989); *Hartpence v. Youth Forestry Camp*, 325 N.W.2d 292, 295 (S.D.1982). Under these rules of statutory construction we are bound to find the procedure set forth in SDCL 19–16–38 applies only at the adjudicatory phase of a dependency and neglect proceeding, but not at the dispositional phase. Consequently, the hearsay testimony was properly admitted and considered during the dispositional phase of

* SDCL ch. 26-8 contains the procedures for three different juvenile proceedings: dependency and neglect, child in need of supervision and juvenile delinquency.

these proceedings. *See Matter of C.J.H.*, 371 N.W.2d 345 (S.D.1985).

## TERMINATION OF FATHER'S PARENTAL RIGHTS

Father contends that termination of his parental rights was not the least restrictive alternative commensurate with the best interests of S.M. and H.M. He bases his argument on the fact that his parental rights were terminated solely as a result of the sexual abuse allegations and that such allegations were erroneously admitted and considered by the trial court. However, we have determined the trial court did not err in considering this testimony, and therefore, this fact may not serve as a basis to reverse the trial court's decision.

██ Parental rights may not be terminated without a showing by clear and convincing evidence that termination is the least restrictive alternative commensurate with the best interests of the children. *Matter of C.L. and R.P.*, 397 N.W.2d 81, 85 (S.D.1986); *Matter of S.M.*, 384 N.W.2d 670, 673–74 (S.D.1986). After a careful review, we find the evidence supports the trial court's decision. As to sexual abuse, the record reveals both H.M. and S.M. spontaneously, and without apparent coaching, related instances of inappropriate touching of their genitals by Father. Using anatomically correct dolls, both girls identified the vaginal area as that part of the body touched by Father. S.M. also indicated that she had touched her Father's genitals and rubbed them in a masturbatory fashion. Both children demonstrated sexual knowledge beyond the scope of their developmental levels, and the stories of both children were detailed and consistent.

We affirm on all issues raised by Father, but reverse the determination of dependency and neglect as to Mother and the termination of Mother's parental rights without prejudice to file a petition against her.

MILLER, C.J., and AMUNDSON, J., concur.

HENDERSON, J., concurs with writing.

SABERS, J., concurs in part and dissents in part.

HENDERSON, Justice (concurring).

I concur on Issue One (MOTHER'S DENIED CONTINUANCE).

On Issue Two (DEPENDENCY AND NEGLECT AS TO FATHER), I concur because the father subjected these children to extremely difficult and bad conditions by sheltering them at Vale, South Dakota, in a shell (house) which was simply uninhabitable, i.e., frozen pipes, no refrigerator, no cooking stove, filthy conditions, and with no beds—simply a mattress on the floor.

On Issue Three (HEARSAY TESTIMONY AGAINST FATHER), I concur under the language of SDCL 19–9–14(7) and our holding in *C.J.H.*, 371 N.W.2d 345 (S.D.1985), a unanimous opinion written by this special writer. Trial courts and lawyers have been relying on this statute and said decision. Consistency in the application thereof should be maintained. *See also, People in Interest of C.H.*, 390 N.W.2d 54 (S.D.1986).

On Issue Four (TERMINATION OF FATHER'S PARENTAL RIGHTS), there is no doubt that father, after the adjudicatory phase, began to parent these children in a far better manner. He cooperated with the DSS, completed his STEP classes, started a new job in Sturgis, and took an active interest in the girls' activities. His life was looking up. The trial court was seriously considering returning the girls to him, and so stated. However, the sexual abuse surfaced. I quote the trial court from the record: "... but for the sexual contact of [D.M.] that a termination would be out of line with regard to [D.M.]. I feel that with the sexual contact that I have no recourse but to terminate...." Aside from the hearsay evidence on sexual abuse (statements from DSS operatives) there is evidence, physical in nature, corroborating his abuse of at least one of these girls by a physician who examined her. He found that the perineal area was quite irritated in a linear fashion down along the labia minora bilaterally. Hence, I am compelled to

protect these girls from further abuse and I join the majority opinion on this issue, also.

SABERS, Justice (concurring in part and dissenting in part).

I dissent on issue three concerning admissibility of hearsay testimony against Father at the dispositional hearing.

SDCL 19–16–38 sets forth a mandatory procedure before certain hearsay testimony can be admitted "in *any* proceeding under chapter 26–8" (emphasis added). The dispositional hearing which terminated Father's parental rights was a "proceeding under chapter 26–8." *See* SDCL 26–8–22.-10, 22.11, 26–8–35 to 26–8–36. Therefore, the circuit court should have required compliance with SDCL 19–16–38 before admitting this hearsay testimony against Father.

The majority opinion attempts to save the erroneously admitted hearsay by citing SDCL 19–9–14(7), which generally provides that evidentiary rules in chapters 19–9 to 19–18 are inapplicable to "[d]isposition hearings in juvenile court." Since SDCL 19–9–14(7) appears to conflict with SDCL 19–16–38, the majority opinion permits the former statute to prevail over the latter.

It should be the other way around for three reasons:

(1) SDCL 19–9–14(7) exempting "disposition hearings" from the rules of evidence was enacted in 1978. However, the affirmative application of the evidentiary rule at 19–16–38 to "any proceeding under chapter 26–8" was a 1987 amendment to that statute. As amended, SDCL 19–16–38 expresses a more recent legislative intent than SDCL 19–9–14(7). In fact, since the category "disposition hearings in juvenile court" is one item in a list of evidentiary rule exclusions within SDCL 19–9–14, a simple explanation for the discrepancy may be that subsection (7) of SDCL 19–9–14 was inadvertently overlooked when SDCL 19–16–38 was amended.

(2) Even more important, SDCL 19–16–38 is the more specific statute of the two. Whereas SDCL 19–9–14(7) generally exempts "disposition hearings" from all the rules of evidence except those concerning privilege, SDCL 19–16–38 applies one specific rule of evidence—the hearsay admission procedure—to one specific circumstance in proceedings under chapter 26–8—when a "statement made by a child under the age of ten describ[es] any act of sexual contact." The applicable rule of construction in cases of statutory conflict is that the specific trumps the general. "Where there is a specific enactment, that provision prevails over the terms of the general enactment." *Hartpence v. Youth Forestry Camp,* 325 N.W.2d 292, 295 (S.D.1982). *See also Meyerink v. N.W. Public Service Co.,* 391 N.W.2d 180, 184 (S.D.1986).

(3) Generally, during the adjudicatory phase, the well-being of the child is directly at risk but parental rights are not yet in jeopardy. By the time of the dispositional phase, the state has already intervened to protect the child from immediate harm and parental rights are on the line. *See* SDCL 26–8–22.13 to 26–8–23.1, 26–8–36. It defies logic for the majority opinion to conclude that the legislature intended stricter hearsay admission standards in the *adjudicatory* phase than in the *dispositional* phase, since by that time the child is at least provisionally protected and the parent stands to lose everything. "[I]n construing statutes together, it is presumed that the legislature did not intend an absurd or unreasonable result." *Appeal of AT & T Information Systems,* 405 N.W.2d 24, 27–28 (S.D.1987) (citing *Applications of Black Hills Power & Light Co.,* 298 N.W.2d 799, 803 (S.D.1980)).

The common sense way to construe SDCL 19–16–38 together with SDCL 19–9–14(7) is that while the rules of evidence *generally* are not applicable to dispositional proceedings under chapter 26–8, the hearsay admission rule at 19–16–38 is applicable to those dispositional proceedings in which the declarant is a child under ten describing an act of sexual contact. Therefore, SDCL 19–16–38 is the controlling statute in this instance and the hearsay testimony was improperly admitted under this statute. Because, as the majority opinion observes, "[t]his hearsay testimony was critical to the trial court's decision to termi-

nate Father's parental rights," the error was prejudicial and warrants reversal. We should remand for new proceedings as to both Mother and Father.