320 N.W.2d 795 (1982)
In the Matter of M. S. M., Alleged Neglected or Dependent Child.
No. 13609.
Supreme Court of South Dakota.
Considered on Briefs April 28, 1982.
Decided June 16, 1982.
Donna J. Salhany, Dakota Plains Legal Services, Fort Yates, N. D., for appellant mother of M. S. M.
Janice Godtland, Asst. Atty. Gen., Pierre, for appellee State of South Dakota; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.
HENDERSON, Justice.

ACTION
Appellant C. S. M. (mother) appeals from an order of the trial court which permanently *796 terminated her parental rights as to her infant daughter M. S. M. (child) pursuant to a dependency and neglect action. We affirm.

FACTS
During February of 1981, the mother began receiving social service counseling due to difficulty in coping with her domestic situation (e.g.s, fights between the mother and her husband; the mother receiving a black eye; the child heard crying and screaming; complaints by a neighbor of alcohol and drug use in the child's presence; the mother telling a neighbor that her husband attempted to use a knife on the child). The mother's second appointment was scheduled for February 24, 1981, but she failed to appear because of forgetfulness. A caseworker for the South Dakota Department of Social Services (Department) thereafter telephoned the mother and told her to schedule another appointment. However, the mother failed to do so.
On March 6, 1981, the Department learned that the mother was planning to leave town (the mother tried to sell the child's crib and a backpack, neither of which she owned). When contacted by the Department as to why she was leaving, the mother gave several inconsistent explanations. By this time, J. M., the mother's husband and the child's father, had left for Illinois.[1] A few days later, the mother met with a Department caseworker and agreed to see a counselor the next day. The caseworker took her to the appointment. A counseling session for the following week was missed because the mother felt that she could work things out on her own. Subsequently, she agreed to keep eight future counseling appointments.
The mother was arrested on March 31, 1981, for passing no-account checks. Her child was placed in temporary foster care while she remained incarcerated for one week. Upon her release from jail, the mother was required by the trial court to cooperate with the Department. A psychological evaluation was made of the mother at this time; she was diagnosed as having a dependent personality disorder with borderline intellectual functioning.
At this time, the mother began living with a local pastor who assisted her in obtaining employment as a waitress. This job lasted only two days because of her inability to handle the work. The mother visited her child on April 9, 1981. Four days later, the mother met with a caseworker and agreed to a case plan which she signed. The caseworker also contacted a previous employer of the mother to inquire about finding her employment. The employer, however, would not rehire the mother due to her poor past performance as an employee. After living at the pastor's residence for approximately ten days, the mother left and began living with a friend. On April 20, 1981, the mother visited her child; however, on April 30, 1981, the mother ostensibly visited her child as she spent most of the time talking with a receptionist.
An adjudicatory hearing was held on May 1, 1981, to determine whether the child was dependent or neglected. The trial court so found and entered the following conclusion of law:
That termination of parental rights is not indicated at this time, but that temporary custody and control of said child should be given to the Office of Children, Youth and Family Services, for a period of six months, with authority to place in foster care and to provide necessary medical attention, with a view to restoration of said child to its mother if she cooperates in a program of treatment and training under the Division of Vocational Rehabilitation; that the Office of Children, Youth and Family Services shall report to the Court within 30 days as to the status of the case and present a plan of treatment and training for [the mother].
*797 On May 5, 1981, a Department caseworker set up treatment plans and counseling appointments for the mother and explained to her that upon completion of this program the child would be returned to her. The mother began working on May 7, 1981, as a maid at a local hotel but was soon terminated due to her consistent failure to report for work.
On May 14, 1981, the mother failed to keep a scheduled appointment for a physical examination pursuant to her treatment plan. Thereafter, she met with a Department caseworker on May 26, 1981, and queried as to whether it would be best to allow the child to be adopted by the foster parents as the child seemed comfortable with them. She further expressed that possibly her child would not know her when returned to her.
A Department caseworker attempted to telephone the mother (where she was staying with a friend) near the end of May 1981 in an effort to set up a visit with her child but was told that she no longer lived there. Soon thereafter it was learned that the mother had leased an apartment but was evicted for failure to pay rent. Thereupon, she lived with other friends.
As a result of its previous experiences with the mother, the Department of Vocational Rehabilitation desired to conduct some tests on her to determine if she could benefit from one of its programs. Several appointments were scheduled for these tests, but the mother often failed to appear. A Department caseworker ultimately located the mother at a North Dakota residence to find out why the appointments were being missed. The mother explained that she believed that she did not need any assistance as she was not "sick in the head."
Two appointments were made in June of 1981 to allow the mother to visit her child but the mother again failed to keep these appointments. A Department caseworker eventually contacted the state's attorney to see about terminating the parental rights of the mother. In August of 1981, the mother returned a message left by the Department. At this time, the mother expressed no desire to adhere to any of the Department's suggestions or plans and expressed that she would not divulge her address but had plans to move to McLaughlin, South Dakota.
On August 28, 1981, a dispositional hearing was held whereat the mother testified that she had not visited her child for three months because she "just wanted to sort of let things ride and wait and see what was going to happen." The mother also stated at this hearing that she loved her child very much but did not cooperate with the aforementioned vocational rehabilitation program because she wanted to do things on her own. The Department caseworker, who attempted rehabilitation of the mother, testified that she believed that the Department had done all that it could in assisting her. This caseworker further testified that the mother did not want to cooperate and talked of giving up the child for adoption. Also, the caseworker related that at times the mother would only visit with her child for thirty minutes when the visitation period was scheduled for an hour. At the time of the dispositional hearing, the mother was unemployed and did not have her own residence. On September 8, 1981, the trial court ordered that the child be permanently removed from the mother and be placed in custody of the Department with full powers of adoption.
ISSUES
I.
Did the trial court err in finding the child to be dependent or neglected? We hold that it did not.
II.
Did the trial court err in terminating the parental rights of the mother? We hold that it did not.

DECISION

I.
The mother contends that her child was not dependent or neglected within the *798 meaning of SDCL 26-8-6, which provides in pertinent part:
In this chapter unless the context otherwise plainly requires "neglected or dependent child" means a child:
(1) Whose parent, guardian, or custodian has abandoned him or has subjected him to mistreatment or abuse;
(2) Who lacks proper parental care through the actions or omissions of the parent, guardian, or custodian;
(3) Whose environment is injurious to his welfare;
(4) Whose parent, guardian, or custodian fails or refuses to provide proper or necessary subsistence, education, medical care or any other care necessary for his health, guidance, or well-being; or
(5) Who is homeless, without proper care, or not domiciled with his parent, guardian, or custodian through no fault of his parent, guardian or custodian.
The trial court's conclusions of law indicate that subsections (2) and (5) of SDCL 26-8-6 were the basis of its finding of dependency or neglect.
At the conclusion of the adjudicatory hearing, the trial court entered the following findings of fact:
[The child] was placed in temporary foster care on or about March 30, 1981, following the arrest of [the mother] upon Felony check charges, and remains in foster care at this time under custody of the Office of Children, Youth and Family Services[.]
The mother of said child ... is not gainfully employed although she has been baby sitting for a friend and has not received pay for such services; that she has had other employment but has failed to maintain a steady job[.]
[The mother] does not presently have an apartment or home in which she could provide proper care of [the child].
In its findings of fact at the dispositional stage of these proceedings, the trial court stated that the child "continues to be a neglected or dependent child as defined by SDCL 26-8-6[.]"
It is the mother's position that the finding of dependency or neglect was based solely on her arrest for passing no-account checks and subsequent incarceration. We do not agree. The findings of fact by the trial court clearly indicate that other equally pertinent factors were considered. It is the mother's burden to prove that these findings are clearly erroneous. SDCL 15-6-52(a); Matter of D. A. B., 313 N.W.2d 787 (S.D.1981); People In Interest of T. L. J., 303 N.W.2d 800 (S.D.1981); Matter of A. M., 292 N.W.2d 103 (S.D.1980). As evidenced by our previous recitation of the facts surrounding this action, we cannot say that the mother has met this burden. Accordingly, we hold that the trial court's dependency or neglect determination was not erroneous.

II.
Relying upon SDCL 26-8-35.1 and SDCL 26-8-35.2,[2] the mother contends that the five-month period between the order of *799 adjudication (finding the child to be dependent or neglected) and the order of disposition (terminating the parental rights of the mother) violates these statutes. We do not agree. The statutes in question do not come into play until the order of disposition is entered. They were undoubtedly enacted to prevent a dependent or neglected child from being perpetually kept in foster care and to insure that some type of permanent situation is provided for the child. The eighteen-month limitation stated in SDCL 26-8-35.2 is the maximum amount of time (not minimum, as the mother maintains) which a child can be held in potential custodial transition. Furthermore, as we expressed in People In Interest of T. L. J., supra, and Matter of B. E., 287 N.W.2d 91 (S.D.1979), compelling circumstances may require the termination of parental rights without delay.
The mother also alleges that her parental rights should not have been terminated because the Department had not made sufficient rehabilitation efforts prior to the termination being implemented. In this regard, the trial court entered the following findings of fact at the conclusion of the dispositional hearing:[3]
That [the mother] does not have present capability to provide a home and properly to provide parental care of said child; that her plans for the future are unrealistic; and that there is no indication, based upon her past conduct, that her future conduct will be improved; that she is unwilling and unable to accept responsibility;
That [the mother] has wilfully and intentionally failed to cooperate with this Court and with the social agencies involved and has refused to participate in a planned program of treatment and vocational rehabilitation; that she has failed, without reasonable excuse, to keep appointments for testing and counselling;
That [the mother] has failed to keep her social worker and the agency advised of her whereabouts, and has failed to maintain contact; that she has failed to avail herself of opportunities to visit her child and has not attempted to do so since May 29, 1981;
That [the mother] is not presently employed, does not have a regular residence, but has lived with friends since losing her job for failure to report for work on or about June 11, 1981; that she has failed to make restitution for a forged check, and has voluntarily elected to remain without employement [sic] awaiting the outcome of these proceedings.
In determining if parental rights are to be terminated, the paramount consideration is the best interest of the child involved. SDCL 26-8-36; People In Interest of T. L. J., supra; Matter of B. A. M., 290 N.W.2d 498 (S.D.1980). Parental rights, however, are not to be terminated when a less restrictive alternative exists. SDCL 26-8-35; People In Interest of T. L. J., supra; Matter of B. E., supra.
In accord with its findings of fact, the trial court concluded as a matter of law that:
[T]here is no indication, based upon past conduct of [the mother], or her present circumstances, that her future conduct will be any improvement, and it is unrealistic to expect cooperation from her in the future in any program designed to enable her to provide proper parenting for the child[.]
If efforts to aid or counsel the parent by the use of social services prove unavailing, termination of parental rights is justified. Matter of D. A. B., supra; People In Interest of T. L. J., supra; Matter of A. I., 289 N.W.2d 247 (S.D.1980); Matter of R. Z. F., 284 N.W.2d 879 (S.D.1979); Matter of C. E., 283 N.W.2d 554 (S.D.1979). A review of the *800 circumstances of this case and the attendant apathetic attitude of the mother toward her child requires us to hold that the previously quoted findings of fact are not clearly erroneous. SDCL 15-6-52(a); Matter of D. A. B., supra. This Court recently upheld the termination of a mother's parental rights under similar factual circumstances. See Matter of S. A. H., 314 N.W.2d 316 (S.D.1982). We accordingly affirm the trial court in its termination of the mother's parental rights.
Affirmed.
All the Justices concur.
NOTES
[1] The parental rights of J. M. are outside the scope of this appeal. In its findings of fact at the adjudicatory stage of this proceeding, however, the trial court stated that J. M. "has failed to provide support for his wife and the child and has in fact abandoned and deserted them; that he is unwilling to meet his parental responsibilities[.]"
[2] SDCL 26-8-35.1 provides:

If the court places legal custody in the department of social services without an approved plan for long term foster care, the department shall conduct an administrative review every six months of the services provided to the child and the child's family and report its findings to the court. If the department at any time finds that further court action is necessary to terminate parental rights or to clarify the child's legal status, or is desired to implement a case service plan, the state's attorney, on request by the department, shall petition the court for a hearing as provided in § 26-8-62 or § 26-8-63.
SDCL 26-8-35.2 provides:
Pursuant to the hearing petitioned for in § 26-8-35.1, if the child has been in the legal custody of the department of social services for eighteen months, and if it appears that all reasonable efforts have been made to rehabilitate the family, that the conditions which led to the removal of the child still exist, and that there is little likelihood that those conditions will be remedied so that the child can be returned to the parents, the court shall affirmatively find that good cause exists for termination and shall enter an order terminating parental rights pursuant to § 26-8-36. If the court does not find that good cause exists for termination, it shall enter a decree returning legal custody of the child to the parents.
[3] The trial court specifically found that all allegations in the petition for termination of parental rights were true beyond a reasonable doubt. We note that subsequent to these proceedings the United States Supreme Court held that before a State may sever parental rights to a child, due process mandates that the State supports its allegations by at least clear and convincing evidence. Santosky v. Kramer, ___ U.S. ___, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).