In the Matter of S.S., T.D., D.D., and S.D., Alleged Dependent and Neglected Children.

No. 13995.

Supreme Court of South Dakota.

Considered on Briefs April 21, 1983.

Decided May 25, 1983.

Max A. Gors of Gors & Braun, Pierre, for appellants mother and father.

Janice Godtland, Asst. Atty. Gen., Pierre, for appellee State of South Dakota; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

Charles M. Thompson of May, Adam, Gerdes & Thompson, Pierre, for appellee children.

DUNN, Justice.

This is an appeal from an order of adjudication and a decree of disposition in which the parental rights of D.M.D. and L.J.D. (parents) were terminated. We affirm.

In February of 1979 a petition alleging dependence and neglect of S.S., T.D., D.D., and S.D. (children) was filed. The petition was dismissed when parents agreed to participate in alcohol abuse treatment plans and attempt to improve their marital relationship. One month later, in March of 1979, another petition alleging dependence and neglect was filed, alleging alcoholism and marital conflicts were hindering the growth and development of the children. Parents subsequently admitted to the petition and legal custody was placed in the Department of Social Services (Department) with weekly visitation rights granted to the parents and a review of the case scheduled to be made within six months' time.

In January of 1980 the case was reviewed by the trial court. It was determined that the best interests of the children would be served if Department continued as legal guardian while parents worked out their marital and alcohol problems. On June 17, 1980, the children were returned to the home. At that time, only the mother was in the home since the father was serving time in the South Dakota State Penitentiary for his third DWI offense. Approximately ten minutes after the social worker left, the mother had the children taken to a friend's home, where they remained until the following day. At 4:00 p.m. on June 18, 1980, Department was informed of the children's situation. A social worker for Department made several contacts with the mother that day. The mother admitted to using valium and smelled of alcohol. The mother said she could not handle the children and asked the social worker to take the children back.

Throughout the course of this case parents would sporadically attend alcohol abuse sessions. The mother was also receiving counseling but would frequently skip her appointments. The mother also attended several inpatient treatment sessions. In November of 1980 the mother admitted herself to a local hospital and was treated for acute and chronic alcoholism.

On June 30, 1980, Department requested permanent termination of parental rights. After a hearing, the trial court determined that there was sufficient evidence to conclude that the children were dependent and neglected. Again, however, the trial court was reluctant to press the issue since some progress was being made by parents. Thus, the trial court delayed the dispositional hearing to allow further time for parents to complete their rehabilitation.

On January 23, 1981, the trial court held a dispositional hearing and permanently terminated the parental rights. The trial court then suspended the implementation date of its own order until July 6, 1981. During that time, the trial court would review the conduct of the parents. Parents were expected to refrain from drinking and provide the children with a stable home life.

During the period of suspension, the children were placed back in the home, one by one, in two-week intervals. The last placement was April 3, 1981. Department first became aware of more drinking problems in the home one day before the last placement. Later, on April 30, 1981, police were in-

formed the mother had nearly run over someone. Locating the car and driver, the police noticed the mother was unsteady on her feet and smelled of alcohol. Soon after, employees of Department and a policeman visited the mother at her trailer home. The home was littered with dirty clothes and dirty dishes were stacked in the sink and on the table and counter tops.

The mother was arrested and booked that same morning when she again attempted to drive after being warned not to do so. She had been arrested ten days before for petty theft and had been drinking on that occasion also. Less than one month later, the father was also arrested—this time for his fourth DWI offense.

On June 30, 1981, a hearing was held to determine whether termination should become effective immediately. Findings of fact and conclusions of law to that effect were entered on August 31, 1981. Appeal was taken to this court and on August 25, 1982, the case was reversed and remanded for entry of findings of fact and conclusions of law and a corresponding order consistent with the evidentiary standard adopted in *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). After reviewing Department's proposed findings, conclusions and orders on remand and parents' objections thereto, the trial court entered its findings and conclusions and once again terminated parental rights. Parents now ask us to review the trial court's action.

Parents note that prior to *Santosky, supra,* the State was required to show dependence and neglect by a preponderance of the evidence. SDCL 26–8–22.5, 26–8–22.9, and 26–8–22.10. Subsequent to the United States Supreme Court's ruling in *Santosky, supra,* the burden of proof was raised to require that dependence and neglect be established by clear and convincing evidence. Parents believe this change in the burden of proof also requires a change in our standard of review. We cannot agree.

■ Whether dependence and neglect exists is a question of fact for the trial court. SDCL 15–6–52(a) specifically states that such findings shall not be set aside by this court unless they are clearly erroneous. Contrary to parents' assertion, this standard of review does recognize or discriminate among various burdens of proof that are required at the trial level. Thus, in the case at hand, we must determine whether the trial court was clearly erroneous in finding the evidence supporting termination was clear and convincing.

Parents contend that evidence of dependence and neglect from proceedings prior to the return of the children on June 17, 1980, should not have been considered by the trial court in reaching its final decision in this case. Parents point out the admissibility of prior records was never ruled upon by the trial court at the termination hearing. According to parents, the trial court's references to and reliance on prior proceedings in its findings of fact and conclusions of law was in error. Thus, parents believe the sole question here is whether the mother's conduct on June 17 and 18 of 1980 amounts to dependence and neglect.

■ We find parents' position to be without merit. Termination of parental rights are serious matters which touch the basic fabric of our way of life—the family unit. The decision to terminate requires evidence of sufficient magnitude to convince the trial court that the best interests of the children require the breakup of the family unit. This decision cannot be made by focusing the court's attention to one incident while the full picture is ignored. Even if prior proceedings were not formally admitted at the hearing, we have said that "trial courts may take judicial notice of their own records or prior proceedings in the same case." *State v. Olesen,* 331 N.W.2d 75, 76 (S.D. 1983); *see also State v. Cody,* 322 N.W.2d 11 (S.D.1982). That is clearly what the trial court did in the case at hand and we do not find its decision to do so to be in error.

■ This case depicts a sad story in which both parents had severe alcohol addiction problems. In addition, the mother used other drugs, including valium, with some frequency. These problems adversely affected the children. As the trial court noted in its initial memorandum opinion:

This Court has concluded on several times in the past that the alcoholism and parental conflict within the home, produced an environment that was injurious to the welfare of the children, that the children lacked parental care because of these problems by the parents, and that these problems resulted in a situation where the parents were not providing for the proper care for the necessary health, guidance and well-being of the children. It would appear that the rehabilitation efforts have not progressed to a point where the parents are in a position to correct the problems of the past. This Court because of its belief that children and their natural parents belong together, has for a period of years now hoped against hope that the rehabilitation efforts would be successful to the point where the children could be placed back in the home under what would hopefully be stable enough conditions so that their future would be best provided for in that home. But the best interests of the children require that some certitude and stability enter their life. To continue placing the children in and out of the parental home in the judgment of this Court is detrimental to them. Consequently, the Court has come to the conclusion that the children's best interest will finally be served only by the permanent termination of the parental rights of [father and mother] over them, [and] that all parental rights be placed in the Department[.]

As we have said numerous times in the past, "[w]here efforts to aid or counsel parents by the use of social services proves unavailing, termination of parental rights is justified." *Matter of D.A.B.,* 313 N.W.2d 787, 788 (S.D.1981); *citing People in Interest of T.L.J.,* 303 N.W.2d 800 (S.D.1981); *citing Matter of A.I.,* 289 N.W.2d 247 (S.D. 1980). That is the posture of the case before us today. We find ample evidence in the record to conclude the trial court did not err in finding there was clear and convincing evidence to terminate parental rights in this case.

The order of disposition on remand is affirmed.

All the Justices concur.