The PEOPLE of the State of South Dakota in the Interest of S.M.M., J.A.M., and S.A.M., Minor Children, and Concerning M.M., C.M., and South Dakota Department of Social Services.

Nos. 14289, 14297.

Supreme Court of South Dakota.

Considered on Briefs March 21, 1984.

Decided May 29, 1984.

Janice Godtland, Asst. Atty. Gen., Pierre, for appellee, State of South Dakota; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

William E. Anderson, Belle Fourche, for Minor Children.

Bruce A. Hubbard and Dale R. Hansen of Morrill, Hansen, Hubbard & Brown, Sturgis, for appellant-respondent Father.

Bryce Flint, Sturgis, for respondent Mother.

FOSHEIM, Chief Justice.

M.M. (father) and C.M. (mother) appeal from an order terminating the parental rights of both in their minor children, S.M.M., J.A.M. and S.A.M. We affirm.

The parents were married in May 1977. S.M.M. was born November 8, 1977, and

the twins J.A.M. and S.A.M. were born prematurely on March 4, 1980. During their first year both twins suffered respiratory difficulties and J.A.M. underwent heart surgery. The Department of Social Services (Department) first became involved in March 1981 at the request of the Pennington County Health Nurse, because the mother had failed to keep important medical appointments for the twins.

The Department perceived "neglect related issues" and began providing the family with home-based family services which included nurses' visits and a nutritional aide. A social worker gave individual and marital counseling and assistance with household management skills. The Department also provided child care to help relieve the mother who felt overwhelmed by the children.

During her initial visits the social worker found the children with poor care. Their clothes were seldom changed. At its worst, the kitchen floor was covered with molding food, dirt, cigarette butts and overflowing garbage. Hazardous items were found within easy reach of the children.

Marital difficulties developed and in September 1981 the mother impulsively left for California, leaving the children in the father's care. The father tried unsuccessfully to work and raise the children by himself. He encountered financial problems and home-based family services were intensified. Between November 1981 and February 1982 neighbors often reported the children were filthy, unsupervised and improperly fed. Neighbors also reported that the father frequently hosted parties at which he and teenage guests drank alcohol and used drugs.

In March 1982 the Department filed a petition for a determination that the children were dependent and neglected, pursuant to SDCL 26–8–6. The social worker hoped in this way to impress the parents with the seriousness of the deteriorating home environment. Later that month the father's financial situation worsened and he requested that the children be placed in foster care. On March 25 the circuit court issued an order granting the Department temporary custody of the children. The Department took custody to help the father stabilize himself.

The children were returned to the father's care on June 19, 1982. The mother abducted the children on June 24. She was arrested in Wisconsin on July 25 and the children were returned to South Dakota. The father was vacationing in Virginia when he was notified of the children's return. He did not return until the end of his designated vacation leave, and the children were again placed in foster care.

At the adjudicatory hearing on September 7, 1982, both parents admitted that the children were dependent and neglected. The children were returned to the father on December 22, 1982, and remained in his care until the dispositional hearing on March 23, 1983, at which time custody was awarded to the Department.

In determining whether to terminate parental rights, the paramount consideration is the best interests and welfare of the child. SDCL 26–8–36; *In re M.S.M.*, 320 N.W.2d 795 (S.D.1982). It is hazardous, however, to assume that removing a child from an imperfect home invariably will benefit the child. *People in Interest of S.L.H.*, 342 N.W.2d 672 (S.D.1983); *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Although parents and their children do not have identical interests, the parental interest in the companionship, care and custody of the children is a strong one and is reciprocated by the child's equally weighty interest in the nurture, love and instruction of the parents. *In re S.L.H.*, 342 N.W.2d 672; *Lehman v. Lycoming County Children's Services*, 648 F.2d 135 (3rd Cir.1981), *aff'd*, 458 U.S. 502, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982). The trial court should therefore balance the rights of the parent with the best interests of the child and the public. *In re P.M.*, 299 N.W.2d 803 (S.D.1980).

It appears the dispositional court correctly balanced the interests and properly terminated both parents' rights. The

mother abandoned the children and took very little interest in them. When they were in her custody, they were not cared for or properly supervised. She maintained a careless attitude toward them. Whenever she felt overwhelmed by responsibility she would simply take off. Her transient lifestyle, which frequently included hitchhiking long distances, was intolerable and hopeless for the children.

The father's lifestyle is also far from exemplary. The father:

1. Fails to keep employment because of his continual tardiness and fails to show up for work with resulting severe financial problems.

2. Often left the children filthy, unsupervised and improperly fed.

3. Over the period in question, has never really cared for the children; instead he has depended on social workers to care for them, tried to dump them on his parents, or returned them to foster care each time they were placed in his custody.

4. Was convicted of burglary for an incident in which he kicked in a store window to steal a chess set. For this he received probation and jail time which necessitated the placing of the children in foster care.

5. Hosted parties in his home for teenagers where alcohol and drugs were used and when his children were present.

6. Maintained a sexual relationship with a teenage girl under the age of sixteen when the children were in the household.

7. Has been given the benefit of alternatives short of termination. This includes intensive counseling on child care, parenting skills, parent aid, nutritional aid, and medical follow-ups from community health services. He received ADC and food stamps. In spite of all these services, he would after a few weeks regularly turn the children over to foster care.

 Under these circumstances, the trial court ran out of alternatives short of termination. We feel there was clear and convincing evidence to support the trial court's termination of the father's rights. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). It was the least restrictive alternative. Where, as here, efforts to assist the parent through the use of social services prove unavailing, the trial court is justified in terminating. *S.L.H.*, 342 N.W.2d 672; *In re S.S.* 334 N.W.2d 59 (S.D.1983).

Affirmed.

All the Justices concur.