**The PEOPLE of the State of South Dakota in the Interest of D.H., M.H., and M.H., Children, and Concerning M.H., Mother.**

No. 15518.

Supreme Court of South Dakota.

Considered on Briefs April 23, 1987.

Decided June 24, 1987.

Frank J. Driscoll of Gunderson, Farrar, Aldrich & DeMersseman, Rapid City, for appellant Mother.

Janice Godtland, Asst. Atty. Gen., Pierre, for appellee State; Roger A. Tellinghuisen, Atty. Gen., Pierre, on brief.

HENDERSON, Justice.

PROCEDURAL HISTORY

This is a dependency and neglect action wherein the parental rights of M.H. (Mother) were terminated as to her minor sons D.H., M.H., and M.H. Mother has appealed, contending the circuit court erred by:

(1) Refusing to grant her motion for a continuance at the Dispositional Hearing.

(2) Not specifically finding she was an unfit parent.

(3) Terminating her parental rights without making reasonable efforts to assist her and for the basic reason that she has lived in poverty.

As reflected by our rationale below, we reject Mother's contentions and affirm the Dispositional Order of the circuit court.

FACTS

Mother is a divorced parent who had custody of her three minor sons; D.H., born May 17, 1974; M.H., born August 11, 1976; and M.H., born March 6, 1982. On December 21, 1984, Mother was arrested in Rapid City, South Dakota, for writing a bad check. A background check by police also showed M.H. had arrest warrants issued for bad checks written in Bowman, North Dakota, and Glendive, Montana. At the time of arrest, M.H. and her sons were living in an automobile. The State of South Dakota took charge of these three boys while their Mother was confined in

jail. Shortly after the arrest, the boys expressed that they had not attended school since before Halloween and had been moving frequently. It is apparent that their educational needs were not being fulfilled and their home was an automobile.

The Department of Social Services (DSS) assumed temporary care of the children and was awarded temporary custody on December 26, 1984, for a period not to exceed thirty days. The three boys were placed in foster care and the two older boys were enrolled in school. On April 18, 1985, DSS was awarded custody of the children during pendency of the proceedings. One day later, DSS filed a petition alleging the children were dependent and neglected. Mother was convicted on the bad check charge and served six months in jail. During her incarceration, she visited with her sons approximately every three weeks. The foster mother observed that these visits revealed there was little affection demonstrated from the children to Mother and from Mother to the children.

In July 1985, Mother was released from incarceration. Social Worker Van Hunnik became involved in the case in August 1985. At that time, Mother was living in Bowman, North Dakota. Mother made the choice to remove herself from the general geography of where her children were living.

In September 1985, D.H. was to undergo surgery to correct a hearing problem. Mother, after initially welcoming the surgery, requested, on the day before the operation, that it be delayed because she lacked funds to travel to the hospital in Rapid City. Social Worker Van Hunnik informed Mother the surgery could not be rescheduled. Mother then stated she would appear and sign a surgery consent form. On the day of surgery, Mother appeared too late to sign the consent form. Upon arriving, she upset D.H. by describing the risk involved in such an operation. *Inter alia*, she told the boy that she hoped

he would survive the surgery. In the presence of the boy, she threatened to sue the hospital and the judge who had ordered that the surgery take place. Judge Grosshans had previously signed D.H.'s consent form and the operation occurred as planned.[1] After November 5, 1985, Mother visited monthly with her children.

An Adjudicatory Hearing was scheduled for December 17, 1985, but was postponed due to Mother's inability to attend. In early February 1986, Mother signed a Stipulation and Agreement in which she agreed her children were dependent and neglected. Essentially, Mother agreed to (a) seek adequate employment, (b) obtain a suitable home, (c) apply for Aid to Dependent Children (ADC) if her children were returned, and (d) cooperate with both DSS and Court Services personnel. DSS agreed to make every reasonable effort to reunite Mother with her children. As we will detail below, her promises to the trial court, to save custody of her children, meant little to her.

On February 14, 1986, Mother signed a DSS Case Service Plan designed to "protect the ... children from harm and to establish a stable home for the children." Mother agreed, *inter alia*, to undergo a psychological evaluation and comply with the terms of the Stipulation and Agreement.

From February through early May 1986, Mother resided in Rapid City, living in three different motels and a room in a private residence. DSS did not actively aid Mother in her search for a suitable home. However, Social Worker Van Hunnik testified that Mother had sufficient time to locate suitable housing as she was unemployed. It would appear that Mother owed an obligation to attempt to find a suitable home; she was also under a court order to do so. DSS encouraged Mother to utilize Job Services and employment agencies to find work. The record indicates Mother did obtain part-time employment selling Avon products but the record further reflects that she had several job offers which she

---

1. A second surgery, intended to completely restore D.H.'s hearing, was to occur on March 31, 1986. This boy knew that the surgery would take place and totally accepted it, expressing that he would be able to hear like other children. However, this operation was cancelled the day before it was to occur as Mother expressed uncertainty that it should proceed. Prior to her decision, Social Worker Van Hunnik repeatedly discussed this operation with her. Mother's last-minute cancellation emotionally traumatized the boy.

refused. Counseling from the Social Worker, encouraging her to accept these jobs, so that she might have income to support her child, proved fruitless. She left the Avon position in early May 1986 and returned to Bowman, North Dakota, as the possibility existed that Mother would inherit a sum of money.

On May 19, 1986, an interim dispositional hearing was held and a resulting Order was filed.[2] Mother was ordered to (1) continue to seek employment, (2) establish an adequate home environment, (3) undergo a psychological examination and counseling if indicated, (4) attend parenting classes, and (5) generally conform her conduct and make all scheduled court appearances. Mother was placed on notice that her failure to comply with this Order would result in "probable termination of her parental rights...." The court also ordered DSS to continue to make reasonable efforts to reunite Mother and her children. A final dispositional hearing was ordered to be held within sixty days of said Order.

Mother failed to attend two separate appointments at which psychological evaluations would have been given. Mother cancelled several prearranged weekly visits with her children.

A Dispositional Hearing was held on July 14, 1986. Mother failed to appear and her counsel moved for a continuance. Apparently, the circuit court recognized her laggard conduct in the past on attending hearings, the express order that she must make scheduled court appearances, took into consideration her feeble protests through counsel, and refused to grant the continuance. Mother's parental rights were terminated which triggered this appeal.

## DECISION

### I.

### REFUSAL OF CONTINUANCE NOT AN ABUSE OF DISCRETION

■ Mother advocates the circuit court's refusal to grant a continuance on grounds that she was unable to attend the July 14,

1986 Dispositional Hearing was reversible error. She claims she lacked funds to repair her automobile and was unable to arrange alternate transportation and was therefore precluded from testifying in her own behalf. Thereby, she maintains she was prejudiced.

This Court has repeatedly stated that the granting or refusal of a continuance is within the sound discretion of the circuit court, and its rulings will not be reversed absent a clear abuse of discretion. *In re C.J.H.*, 371 N.W.2d 345, 349 (S.D.1985) (citing *State v. Rosales*, 302 N.W.2d 804, 805–06 (S.D.1981)). *See Olesen v. Snyder*, 277 N.W.2d 729, 732–33 (S.D.1979). *See also* SDCL 15–11–4 (which essentially states a continuance may be granted "upon good cause shown."). An abuse of discretion "refers to a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Gross v. Gross*, 355 N.W.2d 4, 7 (S.D.1984). We absolutely cannot state that there was a clear abuse of discretion by this trial court.

In *C.J.H.*, 371 N.W.2d at 348, a parent made a motion for a continuance on grounds that she was inebriated and unable to attend or participate in a scheduled adjudicatory hearing. The circuit court denied the motion and we affirmed, stating:

Here, mother voluntarily imbibed alcohol over several days' time until she reached the point of requiring admission to an alcohol treatment program to detoxify herself. There is no contention that she was unaware of the date of the adjudication hearing. All other parties were prepared to proceed; mother was represented by counsel; and the children had already been in the custody of the Department for one month. Any impairment of mother's right to participate in the adjudicatory hearing was of her own accord. Under these circumstances, the trial court did not abuse its discretion in denying a continuance.

*Id.*, at 349 (citing *Cleeland v. Cleeland*, 249 N.C. 16, 105 S.E.2d 114 (1958)) (additional citations omitted).

---

**2.** Mother did not appear at this hearing. According to Social Worker Van Hunnik's July 14, 1986 Report To The Court, Mother failed to appear because she was arrested in Belle Fourche for driving with an expired license.

In the present case, Mother admitted she had notice of the July 1986 Dispositional Hearing and that it was timely given. All other parties were prepared to proceed as planned. Additionally, Mother was represented by counsel and the children had been in the custody of DSS for approximately eighteen months. A notice of this hearing was dated June 18, 1986, and duly served upon her attorney. It appears that she had ample time to make the necessary arrangements to attend this hearing.

Mother chose to leave the city in which her children were domiciled, namely, Rapid City. She moved to Bowman, North Dakota, of her own accord. As earlier depicted, she refused accepting employment so if she was financially unable to arrange travel from the State of North Dakota to Rapid City, South Dakota, it was self-inflicted. The trial court was faced with moving this case along, not for the benefit of its own court calendar but to safeguard these boys' interests and to prevent stall and delay from causing further detriment to them. As in *C.J.H.*, "[a]ny impairment of mother's right to participate in the adjudicatory hearing was of her own accord." 371 N.W.2d at 349. Mother's inability to keep scheduled appointments is reflected in the record. She (1) often missed scheduled visits with her sons; (2) failed on two occasions to keep appointments for psychological examinations; and (3) did not attend the December 17, 1985 Adjudicatory Hearing, the May 19, 1986 Interim Dispositional Hearing, or the July 14, 1986 Dispositional Hearing. Her numerous nonappearances were of such a problem as to prompt the following language in the May 19, 1986 Interim Dispositional Order: "Ordered, that this Order is notice to [Mother] that if she fails to comply with this order, *fails to make court appearances,* and fails to conform her conduct, and fails to follow through with the case service plan, probable termination of her parental rights will result...." (Emphasis added.) Under these circumstances, there was not a clear abuse of discretion. *See C.J.H.,* 371 N.W.2d at 349; *Gross,* 355 N.W.2d at 7.[3]

## II.

### SHOWING OF UNFITNESS CONTAINED IN THE RECORD

■ Mother advocates her parental rights were erroneously terminated because she was not proven an unfit parent. In convoluted fashion, Mother apparently argues that the circuit court focused upon the best interests of the children rather than if she was an unfit parent. She concludes remand is mandated with directions that the circuit court enter specific findings of fact on the subject of her parental unfitness.[4] We do not agree.

This Court has repeatedly held that the circuit court is required to balance a parent's fundamental right to raise a child with State's interest in protecting that child's best interests and welfare. *In re S.D.,* 402 N.W.2d 346, 352 (S.D.1987); *In re G.H.,* 390 N.W.2d 54, 57 (S.D.1986); *In re P.M.,* 299 N.W.2d 803, 807 (S.D.1980). But in all situations, the best interests of the

---

3. *C.J.H.* is distinguishable from the present case in that the continuance requested and denied in *C.J.H.* occurred during an adjudicatory hearing; parental rights were not terminated at that time. *See C.J.H.,* 371 N.W.2d at 348–49. In our case, Mother's request for a continuance came during the Dispositional Hearing; her parental rights were terminated.

4. Mother cites to *Quilloin v. Walcott,* 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978), for the proposition that parental unfitness is a prerequisite to termination of parental rights. In *Quilloin,* the United States Supreme Court unanimously wrote:

> We have little doubt that the Due Process Clause would be offended "[i]f a State were to attempt to force the breakup of a natural

family, over the objections of the parents and their children, *without some showing of unfitness* and for the sole reason that to do so was thought to be in the children's best interest." *Id.,* 434 U.S. at 255, 98 S.Ct. at 555, 54 L.Ed.2d at 520 (quoting *Smith v. Organization of Foster Families,* 431 U.S. 816, 862–63, 97 S.Ct. 2094, 2119, 53 L.Ed.2d 14, 46–47 (1977) (Stewart, J., concurring in judgment)) (emphasis added). As detailed below, we possess no doubt that the "some showing of unfitness" mandate has been easily met in this case. Our decision to affirm the circuit court on this issue therefore does not run afoul of the United States Supreme Court's teachings in *Quilloin.* We note the word "some."

child are paramount. *S.D.*, 402 N.W.2d at 352; *In re S.M.*, 384 N.W.2d 670, 673–74 (S.D.1986).

The circuit court, in the present case, specifically found, *inter alia*, based upon the evidence that (1) Mother showed "disregard for the physical well-being of [her] minor children ... and that potential harm could come to the minor children if said children were returned to the custodial care of the ... [M]other."; (2) "Financial conditions prevail which prevent ... [M]other from properly functioning as a parent...."; (3) "[M]other has demonstrated a lack of firm intention to provide for the proper care of her children as evidenced by failure to provide a proper home environment and her lack of employment."; (4) "[Mother] has failed to provide for the children's necessary subsistence, medical care, and other care necessary for their health, guidance and well-being in that she has failed or refused to provide money for their care and has through her actions delayed or prevented necessary medical procedures to be performed for the children."; and (5) "The least restrictive alternative available commensurate with the best interest and welfare of the minor children and with due regard to the parental rights of the respondent [M]other ... requires termination of all parental rights of respondent [Mother] in respect to the minor children." Appropriately, the circuit court, in its findings of fact, discusses both Mother's fundamental right as a parent (including her difficulties in providing proper parental support for her sons) and the best interests of the children. A circuit court's findings should not be disturbed upon appeal unless the entire evidence leaves us with a firm and definite conviction that a mistake has been made. *In re T.H.*, 396 N.W.2d 145, 148 (S.D.1986). We refuse to conclude that an error was made by the circuit court.

## III.

## DSS TRIED TO ASSIST MOTHER, BUT MOTHER UNCOOPERATIVE AND REFUSED JOB OFFERS THEREAFTER CLAIMING POVERTY AS A DEFENSE

■ Mother lastly advocates State placed her in a situation which predeter-mined termination of her parental rights. She accuses State of hinging return of her children upon her obtaining suitable employment and home environment and then making no active efforts to enable her to achieve those goals. Mother claims her core problem is poverty which is not a sound basis for termination of parental rights, concluding that reversal is warranted. We disagree.

"Parental rights may be terminated if proffered State services are unaccepted or unsuccessful." *S.D.*, 402 N.W.2d at 352 (citing *In re M.S.M.*, 320 N.W.2d 795, 799 (S.D.1982)). *See T.H.*, 396 N.W.2d at 148; *In re J.S.N.*, 371 N.W.2d 361, 364 (S.D. 1985); *In re S.S.*, 334 N.W.2d 59, 62 (S.D. 1983). However,

> "[t]ermination of parental rights is not conditioned on exhaustion of every possible form of assistance," *In re J.S.N.*, 371 N.W.2d 361, 364 (S.D.1985) (citing *In re C.L.*, 356 N.W.2d 476 (S.D.1984)), and where reasonable efforts "to aid or counsel parents by the use of social services proves unavailing, termination of parental rights is justified." *In re J.S.N.*, 371 N.W.2d at 364 (quoting *In re S.S.*, 334 N.W.2d 59, 62 (S.D. 1983)).

*S.D.*, 402 N.W.2d at 351.

The record amply reflects Mother received reasonable offers of assistance from DSS. Poverty, we hold, was not the basis for termination of parental rights. She would not attend parenting classes (these were free). Mother was encouraged to seek employment at Job Services and through private agencies. She obtained a part-time position selling Avon products which position lasted approximately four months. She did not obtain a suitable home for her sons. Mother missed psychological evaluation appointments and cancelled scheduled visits with her children. The psychological evaluations were proffered to help her and would not have cost her a dime. Mother failed to appear at the December 17, 1985 Adjudicatory Hearing, the May 19, 1986 Interim Dispositional Hearing, and the July 14, 1986 Disposition-

al Hearing. In addition, at the time of Mother's December 21, 1984 bad check arrest, the record indicates Mother and her three sons were living in an automobile. Moreover, Mother arrived late to the hospital where D.H. was to have ear surgery, upset him by describing the risk of the operation and then caused a companion surgery, designed to fully restore her son's hearing, to be cancelled. This service was to be paid by Medicaid, as the child was in the State's custody and eligible for this financial service. The circuit court found Mother "made no demonstrable efforts to secure return of the children" and "has shown a lack of concern for the children demonstrated by her actions." As the evidence clearly supports the circuit court's findings, we refuse to overrule it. *See S.M.*, 384 N.W.2d at 673.

We also have carefully reviewed the briefs and cannot find argument, on behalf of Mother, that the findings of fact in this case are clearly erroneous. We are overwhelmed by the evidence that this Mother would not reform her conduct/living style and provide a decent environment for these boys. She absolutely refused to accept the services which were proffered to her which would, essentially, take her down the path of acceptable motherhood. Poverty cannot be used as a crutch, under all the circumstances of this case, to frustrate the sound decision of the trial court.

In affirming, we express that a child is God's opinion that life should go on. We hold that the lives of these three boys go on—productively and with an opportunity to be well-rounded citizens in the future for this Republic. These boys cannot grow and flourish where they are raised in a car, with their Mother in jail, and without decent meals or clothes or medical attention or an education. And their opportunity to flourish is for naught where the proffered services are unavailing/refused. In such instances, parental rights may be terminated. *M.S.M.*, 320 N.W.2d 795; *In re R.Z.F.*, 284 N.W.2d 879 (S.D.1979).

Many writings in this Court have advanced concepts and rules, but one state statute is our beacon; SDCL 26–8–2 expresses the primary purpose of dependency and neglect actions: "This chapter shall be liberally construed in favor of the state for the purposes of the protection of the child from neglect or omission of parental duty toward the child by its parents...."

We affirm.

WUEST, C.J., and MORGAN and MILLER, JJ., concur.

SABERS, J., concurs in result.

SABERS, Justice (concurring in result).

I concur in the result but write specially to point out that absolutely no harm would have resulted from a continuance. The State resisted the continuance when it should have agreed to allow her testimony within the following two weeks. The trial court should have so ordered and refrained from deciding the case from the bench—*especially when* termination proceedings against the fathers were not even started *yet.*