417 N.W.2d 887 (1988)
In the Matter of C.M. and M.N., Alleged Dependent Children.
Nos. 15495, 15501 and 15502.
Supreme Court of South Dakota.
Argued May 20, 1987.
Decided January 13, 1988.
Peter Gregory of Gregory Law Firm, P.C., Sioux Falls, for appellant Mother, R.N.
Thomas J. Farrell of Pruitt, Matthews & Muilenburg, Sioux Falls, for appellant Father, D.N.
Patricia C. Riepel of Minnehaha County Public Defender's Office, Sioux Falls, for appellants Children, C.M. and M.N.
Janice Godtland, Asst. Atty. Gen., Pierre, for appellee State; Roger A. Tellinghuisen, Atty. Gen., Pierre, on brief.
HENDERSON, Justice.
Mother, Father, and children, C.M. and M.N., contend the circuit court erroneously terminated parental rights. We affirm.
From May 1980 to March 1984, the N. family experienced difficulty in maintaining a clean home and children, and properly supervising children. Mother was also an alcoholic. At one time, the children were found alone in a parking lot whereupon the police brought the boys to the Children's Inn. Earlier, on at least three separate occasions, officers of the Sioux Falls Police Department responded to calls concerning C.M. wandering alone on heavily traveled city streets. A Department of Social Services (DSS) dependency and neglect *888 petition resulted which culminated in (a) removal of C.M. and M.N. from parents' home and (b) a May 10, 1984 stipulation signed by parents that their children were dependent. C.M. and M.N. were returned to parents in August 1984. In November 1984, DSS closed its case due to parental improvement. In February 1985, a defective furnace brought police and fire officials to the N. home. DSS became involved due to the unsafe nature of the house endangering the well-being of these children. On April 25, July 17, and July 30, 1985, an adjudicatory hearing was held and C.M. and M.N. were adjudged dependent and neglected. A stipulation was thereupon executed, designed to return C.M. and M.N. to parents. However, DSS (before the two-year period noted in the stipulation) petitioned for hearing on final disposition and parental rights were terminated by the circuit court. DSS' decision was based upon a filthy house, the children being dirty, and Mother being arrested for possession of a controlled substance with subsequent sentence of probation.
Mother, Father, and children appeal.

I.
Mother and Father contend that the trial court erred when it determined that C.M. and M.N. were dependent and neglected. Parents argue that this finding is unsupported by clear and convincing evidence and should be reversed. We disagree.
Clear and convincing evidence supports termination under our holding in In re G.H., 390 N.W.2d 54 (S.D.1986). Findings of Fact were not clearly erroneous under our holding in In re S.M., 384 N.W.2d 670, 673 (S.D.1986).

II.
Mother and Father advocate that clear and convincing evidence does not support termination of parental rights. They contend the circuit court placed undue emphasis on evidence emanating from a past dependency and neglect proceeding and ignored recent improvements made by both parents. We are unpersuaded by this argument.
Evidence from the prior episode was properly admitted as dependency and neglect resulted therefrom. Under our holding in In re J.L.H., 299 N.W.2d 812, 815 (S.D.1980), this evidence was properly submitted; compare, however, our holding in In re N.J.W., 273 N.W.2d 134, 137-38 (S.D. 1978), where this Court applied doctrines of res judicata and collateral estoppel to hold that the circuit court erroneously introduced evidence stemming from a previous dependency and neglect action when such earlier proceeding failed to result in a finding of dependency or neglect. Additionally, as previously expressed, there was a continuing deficient parental conduct and supervision. The circuit court was impressed with a generally unsafe environment and so are we, in that we do not countenance these children being subjected thereto. We hold that the termination was in the children's best interests and welfare and is not clearly erroneous. In re S.D., 402 N.W.2d 346, 352 (S.D.1987).

III.
Appellants contend that termination of parental rights was improper as less restrictive alternatives exist. Relatedly, parents claim they substantially complied with the August 28, 1985 Stipulation conditions and parental rights were erroneously terminated. Under these facts, we do not agree.
A gamut of professional services were made available to both Mother and Father, aimed at resolving the N. family's problems. We note these services: Intensive Placement Prevention, Family Support Worker, Respite Care, Alcohol Assessment for Mother at Carroll Institute, Alcohol Treatment at Keystone for Mother, Parenting through Children's Inn, Early Childhood Screening and Education, Medical Services, Al-Anon for Father, Visiting Nurse's Association, and Crisis Day Care. The least restrictive alternative, commensurate with the best interests of children, was *889 termination of parental rights. We hold that the finding below is not clearly erroneous. The best interests of the child must prevail. In re D.H., 408 N.W.2d 743, 746-47 (S.D.1987). The services were either unaccepted or unsuccessful. See D.H., at 747. We recognize that there was some improvement, but it was not substantial, manifest, or enough. As recent as July 2, 1985, a psychological evaluation on these children depicted them as victims of "benign neglect" by the parents and experiencing severe problems due to a family environment marred by "an impoverished environment lacking in structure and stimulation essential for normal development." This evaluation recommended termination of parental rights. We note that marijuana and alcohol were used in the home, yet Father believed that neither he nor his wife had any problems. Father attempts to shroud himself in the protective guise of breadwinner and blame the home life deficiencies on the Mother. This is rationalization to secure his freedom from a basic parental responsibility. We uphold the circuit court in its finding of clear and convincing evidence for termination of Mother's and Father's parental rights as being the least restrictive alternative commensurate with the best interests and welfare of C.M. and M.N.

IV.
Lastly, Mother asserts the circuit court erred when it refused to permit visitation pending appeal. We disagree.
First of all, an adoptive home was arranged for C.M. and M.N. These children were placed on foster status to enable them to adjust to a new setting before school started. This visitation, now complained of, was first permitted by the trial court at the dispositional hearing. Supplication was made for a termination of the visitation based upon the best interests of the children which resulted in the trial court's decision.
Then, an August 15, 1986 hearing was held and Mother claims error, regarding visitation, on the dictates of the trial court's exercised discretion at this hearing. However, there is no transcript of this latter hearing; as the party claiming error, Mother has the responsibility to insure that a record was made. Therefore, we cannot rule upon the merits of said hearing. See State v. Olson, 408 N.W.2d 748, 752 (S.D. 1987); Schurman v. Schurman, 60 S.D. 489, 492, 245 N.W. 39, 40 (1932). Mother was obligated to "order from the reporter a transcript of the proceedings or such parts thereof as [she] deems necessary." SDCL 15-26A-48. When confronted with incomplete records, our presumption is that the circuit court acted properly. State v. Garton, 390 N.W.2d 61, 63 (S.D.1986); Schurman, 60 S.D. at 492, 245 N.W. at 40.
Affirmed in all respects.
WUEST, C.J., and MORGAN and MILLER, JJ., concur.
SABERS, J., dissents.
SABERS, Justice (dissenting).
I dissent because the evidence supporting termination of the father's parental rights was not clear and convincing and because the termination of his parental rights was not in his sons' best interests or the least restrictive alternative available.
In termination cases, the trial court must find by clear and convincing evidence that termination of parental rights is in the child's best interests; the State must also show that there is no narrower means of providing for the best interests and welfare of the child. Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); People in Interest of T.H., 396 N.W.2d 145 (S.D.1986); Matter of S.M., 384 N.W.2d 670 (S.D.1986). Clear and convincing evidence is evidence that is so clear, direct, weighty, and convincing so as to allow the trier of fact to reach a clear conviction of the precise facts at issue without hesitancy as to their truth. Matter of S.H., 337 N.W.2d 179 (S.D.1983). The clear and convincing standard must be applied in *890 both the adjudicatory and dispositional stages of a termination proceeding. Matter of D.B., 382 N.W.2d 419 (S.D.1986).
Termination of parental rights is a drastic, final step that should be exercised with great caution, Matter of S.H., supra, but in determining whether to terminate parental rights, the paramount consideration is the best interests and welfare of the child. People in Interest of S.M.M., 349 N.W.2d 63 (S.D.1984). This court will not overturn the trial court's findings of fact unless they are clearly erroneous. Matter of D.H., 354 N.W.2d 185 (S.D.1984).
A fair review of the record reveals that the mother had serious problems with alcoholism and drugs and that she had the primary care of the two boys. They were dependent and neglected at least as to her. A fair review of the record shows by clear and convincing evidence that the parental rights of the mother should be terminated. This is not so with the father. The parents have separated. There are no plans to reconcile. The father has steady employment and is a good employee. His employer is satisfied with his employment. Father has maintained his present employment with Dakota By-Products for five and one-half years and earned $16,000 in 1986.
Bruce Carlson, the social worker, testified that the father loves his children and shows them affection; that the children appeared happy while at home and that their nutritional needs were met.
Since the children have been removed father has visited them every opportunity allowed. During his visits they would go roller skating, to movies, to the park, and they would just spend time together. The children mean everything to him. He has regularly visited with the children and the children do not want to leave him after visits. He is a bright, sensitive, and caring individual who presents no danger to the children whatsoever. He should be given a chance to raise his sons in an environment free from the problems which were primarily caused by the mother. The trial court even commended him. The children are healthy, active, normal boys. The father does not smoke, drink or use drugs. He loves his children and they love him.
Almost all of the problems that resulted in the removal of the children from the parents occurred while the children were at home with the mother or supposed to be and while the father was at work.
Mr. Carlson, the social worker, felt that the parental rights of the father to the children should be terminated because father did not provide emotional stimulation to the children. The father can certainly be faulted for being a passive parent and his excuse that he thought their care was the mother's job was inadequate. As indicated, however, there was testimony by social worker Emma Schroeder that father was a bright, sensitive, caring, and stable individual.
Father expressed the desire to have the opportunity to raise his sons. Given that opportunity, he would obtain adequate baby sitting and counseling, he would no longer be a passive parent and would willingly take on the role of an active parent including reviewing school lessons, reading books, and doing puzzles. It appears the father has the ability, resources, and stability to raise his sons by himself. Once the parents separated, DSS lost interest in him. Instead of looking to place the children in the remaining stable parent's household, they stopped all services. Therefore, termination of parental rights was not the least restrictive alternative available to the trial court. As stated by this court in Matter of B.E., 287 N.W.2d 91, 97 (S.D. 1979):
"State intervention for the best interest[s] of the child[ren] cannot be used merely to insure that the child[ren] h[ave] a better home or someone better to care for [them]."
In cases such as this, we must keep in mind that "[t]he fundamental liberty interest[s] of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody *891 of their child to the State." Santosky, supra, 455 U.S. at 753, 102 S.Ct. at 1394-1395, 71 L.Ed.2d at 606.
It is important to note the legal position of the children themselves as set forth in their brief.
Mother [made] great strides in treatment, employment, and finding a stable environment. She appears to have developed the necessary skills to assist the father with the children.
The court went to great lengths discussing the good points of both parents, even commending them for handling their separation in a mature manner.
All of this indicates that there was a less restrictive alternative available to the court. The best interests of the children mandated that the court try this alternative. That alternative is to place the children with the father.
The evidence establishes that less restrictive alternatives to termination exist and that the evidence in support of termination was not sufficiently clear, direct, weighty, and convincing to justify the termination of father's parental rights.
I would reverse and remand to the trial court to return the children to the father as the least restrictive alternative and to determine the appropriate services needed to provide for the best interests of the children.