**In the Interest of A.D., Alleged Dependent and Neglected Child, and D.A.D., Father.**

No. 15488.

Supreme Court of South Dakota.

Submitted on Briefs April 24, 1987.

Decided Dec. 9, 1987.

Tim D. Tucker of Morgan, Theeler, Cogley, Padrnos & Tucker, Mitchell, for appellant father.

Janice Godtland, Asst. Atty. Gen., Pierre, for appellee State; Roger A. Tellinghuisen, Atty. Gen., Pierre, on the brief.

## PROCEDURAL HISTORY

McKEEVER, Circuit Judge.

This is a dependency and neglect action in which the parental rights of D.A.D. (father) were terminated as to A.D. (his minor daughter). Father has appealed contending the trial court erred by:

1. Allowing the mother (D.R.D., mother of A.D. and girl friend of father) to participate through her counsel, by presenting evidence and cross-examining witnesses at the dispositional hearing after the mother voluntarily had her parental rights terminated, and by,

2. Terminating his parental rights since termination was not the least restrictive alternative in his case.

We reject father's contentions and affirm the dispositional order of the trial court.

## FACTS

Father was born in 1960, one of five children. At the time of father's birth and during his early youth, the family had severe financial problems. When father was seven years of age, his father was sent to the state penitentiary after being convicted of grand larceny.

The financial conditions of the family stabilized somewhat when father's father was released from confinement and began a career as a truck driver. However, this profession took the father out of the home for the most part, and the mother was left with the responsibility of raising the family.

Father's parents were no doubt well-intended people who apparently brought neither a well-developed value system nor a meaningful degree of parenting skills to their marriage. During his first teenage year, father was arrested for breaking and entering and was placed on probation. This began a thirteen year history of minor and major criminal offenses including: joyriding, trespassing, driving with an expired driver's license, criminal mischief, shoplifting, vandalism, arson, tampering with a motor vehicle, felony possession of a firearm, and aiding and abetting third-degree burglary. Father also has a long history of violating probation. In 1981 he left the state of Nebraska while on probation and was extradited from Colorado as a fugitive. Since his thirteenth birthday, his history also includes: placement in foster homes, a group home for adolescents, juvenile detention center, jail, and three prison confinements following convictions on felonies. He has never had long period of steady employment. His lifestyle has been a consistent pattern of moving in with women and being supported by them for those periods of time in which he has not been incarcerated.

In July 1984, father met mother. The couple lived together without the benefit of marriage for approximately seven months. On March 11, 1985, father was sentenced to two-and-a-half years in the South Dakota State Penitentiary for aiding and abetting in third-degree burglary. A.D. was born on September 17, 1985, while father was incarcerated. A.D. was conceived and born at a time when mother was legally married to a man other than father. Consequently, for a period of time there existed some uncertainty as to whom the actual father of A.D. was. After blood tests, it was fairly well determined that father was A.D.'s father. A.D.'s mother suffered many personal problems and voluntarily had her parental rights to A.D. terminated on May 5, 1986. On May 26, 1986, father admitted to a petition of dependency and neglect regarding A.D. A dispositional hearing was held on July 9, 1986, in connection with this petition.

While in the state penitentiary father contacted the Department of Social Services by phone on approximately eleven occasions expressing concern about A.D.'s mother and, in five or six of those calls, concern about A.D. Since A.D.'s birth, father has seen her on only two occasions when she was brought for visitations at the state penitentiary. During the contacts with Social Services and at the dispositional hearing, father expressed a desire to retain custody of his child upon his release from the state penitentiary. He indicated to Social Services that he would be willing to take any necessary parental training to acquire custody of A.D. No training was provided since father was incarcerated and the Department of Social Services had concluded they would recommend termination of his parental rights because this was in the best interest of A.D. After a dispositional hearing, the trial court filed an order terminating father's parental rights to A.D.

## DECISION

### I.

WHETHER ALLOWING MOTHER TO PARTICIPATE AS A PARTY IN FATHER'S DISPOSITIONAL HEARING UNDER THE FACT SITUATION OF THIS CASE WAS PREJUDICIAL ERROR.

■ According to the rules of civil procedure, in order to participate as a party in a legal action, it is necessary for a person or entity to have a legal interest to assert or protect in connection with the matter at

bar. 59 Am.Jur.2d *Parties* § 30 (1987). Due to the fact that mother's parental rights had been terminated prior to father's dispositional hearing, she was not a party because she had no legal rights to assert or protect at the dispositional hearing. Certainly, there is nothing that would have prevented her from participating as a witness had she appeared in person and had relevant testimony to offer concerning the welfare of the child or the capacity of father to take care of the child's needs. However, the query presented to us is whether the trial court erred by allowing mother to appear as a party through counsel at father's dispositional hearing.

In two recent cases, Justice Henderson, writing for the majority of this court, pointed out that the rules of civil procedure are to be used in all dependency and neglect adjudicatory hearings, but all other hearings under SDCL Chapter 26–8 (which would include a juvenile dispositional hearing) "... shall be conducted under such rules and regulations as the court may prescribe and designed to inform the court fully as to the exact status of the child and to ascertain its history and environment and the past and present physical, mental, and moral conditions of the child, and of its parents...." *Matter of C.J.H.*, 371 N.W.2d 345, 350 (S.D.1985); *People ex rel G.H.*, 390 N.W.2d 54 (1986); SDCL 26–8–30.

■ Consequently, the trial court did not exceed the latitude it has in dispositional hearings by allowing a non-party to appear through counsel if it did so in making its final determination as to disposition to be best informed about the welfare and conditions of the child or parent. In this case, mother's attorney appeared and was allowed to ask questions along with the state's attorney and the attorney for the child. The questions he posed were on the subject matters that were also covered by the other two attorneys or no doubt would have been covered had they not been asked by mother's attorney. The information elicited led directly to father's qualifications to be a parent. The criminal records and the family background studies used by mother's attorney to ask questions of father were certainly pertinent to the trial court's need to acquire information in order

to make its final determination as to disposition.

■ However, because the state was represented by the state's attorney at the hearing, and the child was being represented by his own court-appointed attorney, there exists no apparent need on the face of the record for the trial court to allow mother's counsel to participate in this hearing. But even if there was no reason for mother's counsel to appear, the question is not "Was there error?" but "Was there prejudicial error?"

The basic rule is that the burden is on the appellant to show not only error but prejudicial error. *Ryken v. Blumer*, 307 N.W.2d 865 (S.D.1981); citing *Lytle v. Morgan*, 270 N.W.2d 359, 362 (S.D.1978). Prejudicial error "is that which in all probability must have produced some effect upon the final result and affected the rights of the party assigning it." *K & E Land & Cattle, Inc. v. Mayer*, 330 N.W.2d 529, 533 (S.D.1983). *See also Koupal & Anton, Inc. v. Wieczorek*, 375 N.W.2d 639 (S.D. 1985); *Wang v. Wang*, 393 N.W.2d 771 (S.D.1986); *People in Interest of H.L., Jr.*, 386 N.W.2d 495 (S.D.1986); *Matter of S.L.*, 349 N.W.2d 428 (S.D.1984); and *Dwyer v. Christensen*, 77 S.D. 381, 92 N.W.2d 199 (1958).

From the information stated above, the court has concluded that the father has not shown prejudicial error and a substantial likelihood that a different result would have been reached had mother's attorney not been allowed to participate in this litigation, even if the trial court had no basis to allow a non-party to participate through counsel. Therefore, it is the conclusion of this court that the father's argument that the trial court committed prejudicial error in allowing mother's attorney to participate as applied to this situation is without merit.

## II.

WHETHER TERMINATION OF FATHER'S PARENTAL RIGHTS WAS THE LEAST RESTRICTIVE ALTERNATIVE BASED UPON ALL THE FACTS AND CIRCUMSTANCES OF THIS CASE.

The trial court, in its dispositional findings of fact, in part, found as follows:

#7 Reasonable efforts to provide appropriate services to the natural father would be unavailing both during and after his incarceration.

#11 The natural father is unfit as a parent and it is contrary to the best interests and welfare of the child to relinquish her to the care of the natural father for the following reasons:[1]

#15 The least restrictive alternative available to commensurate with the best interests and welfare of the child, and with due regard to the parental rights of the natural father, requires termination of all parental rights of the natural father, ... in respect to his child, A.D.

Father argues that the above three findings are clearly erroneous and unsubstantiated by the evidence.

This court's review is governed by the well established clearly erroneous standard. SDCL 15–6–52(a); *People in Interest of S.L.H.*, 342 N.W.2d 672 (S.D.1983); *In re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970). Under this standard, this court shall not set aside findings of fact unless found to be clearly erroneous and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. SDCL 15–6–52(a). In *Hobelsberger, supra,* this court explained the application of the clearly erroneous standard:

> In applying the clearly erroneous standard we must bear in mind that our function is not to decide factual issues de novo. The question for the appellate court is not whether it would have made the same findings the trial court did, but whether on the entire evidence it is left with a definite and firm conviction that a mistake has been committed.

181 N.W.2d at 459.

The United States Supreme Court has stated that natural parents do have a fundamental liberty interest in the care, custody, and management of their children. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *see also Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). While this court has noted that parents have a fundamental right to their children, that right is not absolute or unconditional. *Matter of S.H.*, 337 N.W.2d 179 (S.D.1983); *In re K.D.E.*, 87 S.D. 501, 210 N.W.2d 907 (1973). It is important to remember that children have a right as sacred and secure in the law as parents have. *People in Interest of S.L.H., supra.* Furthermore, the law must not abandon children, but must permit them to grow and flourish. *Matter of J.M.A.*, 286 N.W.2d 324 (S.D.1979). More importantly, in determining whether to terminate parental rights, the paramount consideration is whether the termination is in the best interest of the child. SDCL 26–8–36. *Matter of M.S.M.*, 320 N.W.2d 795 (S.D.1982).

The United States Supreme Court in *Shelton v. Tucker*, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231, 237 (1960) stated:

> In a series of decisions this court has held that, even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved.

This principle has been referred to at times as the "least restrictive alternative." Consequently, in a termination of parental rights at a dispositional hearing, the trial court must find by clear and convincing evidence that termination of parental rights is in the child's best interest and the state must show that there is no narrower means of providing for the best interests and welfare of the child. *Santosky v. Kramer, supra; Matter of S.H., supra; Matter of N.J.W.*, 273 N.W.2d 134 (S.D.1978); *Matter of J.Z.*, 410 N.W.2d 572 (S.D.1987).

■ It is very important to note that while this court recognizes that the fundamental nature of parental rights to their

---

1. The court set forth detailed factual reasons supporting its determination which are summarized later in this decision.

children mandates at least a reasonable effort to aid them in maintaining their offspring, it must be remembered that the best interest of the child must always prevail. *People in Interest of T.H.*, 396 N.W.2d 145 (S.D.1986); *Matter of S.M.*, 384 N.W.2d 670 (S.D.1986). As noted above, in the decision to terminate parental rights, the paramount consideration is the best interest and welfare of the child. *Id.* Furthermore, termination of parental rights is not conditioned on the exhaustion of every possible form of assistance. *People in Interest of T.H., supra.* Nor are services mandated in every case. *Id.; Matter of B.E.*, 287 N.W.2d 91 (S.D.1979).

■ The court may also consider evidence of a parent's past conduct and present incarceration as guidelines in determining whether to terminate parental rights. In discussing these guidelines in *People in Interest of T.H., supra,* Justice Sabers quoted Justice Henderson's concurring opinion in *Matter of A.M.L.*, 371 N.W.2d 358 (S.D.1985). There Justice Henderson indicated that the more enlightened rule followed today is that while parental rights should not be terminated for the sole reason of conviction of a crime or incarceration, the fact of incarceration may be considered along with other factors in determining whether parental rights should be terminated. The other factors should include general fitness of the parent and the length of incarceration. The best interests of the child require that some certitude and stability enter a child's life. *People in Interest of T.H., supra; People in Interest of J.S.N.*, 371 N.W.2d 361 (S.D.1985). A child should not be required to wait for his parents to acquire parenting skills that may never develop; he is entitled to a stable, healthy environment now. *People in Interest of M.J.B.*, 364 N.W.2d 921 (S.D.1985).

■ At the dispositional hearing, the trial judge, in carrying out his responsibility to view the entire record from the standpoint of what was in the best interest and welfare of A.D., saw a bleak picture for A.D. if the parental rights of father were not terminated. A.D.'s natural mother had given up her parental rights and was no where to be found at the time of the father's dispositional hearing. She was still married to a man other than father, and was in no condition to provide any support to the child. The trial judge, in viewing father's potential to provide the minimum skills and nurturing for A.D. as a single parent, concluded that the future for A.D. appeared stark with father based on his current status and past history. He saw a 26 year history where father, in his early child home, had very little, if any, example of a role model to learn the basic skills of coping with life, not to mention those of parenthood. Since his thirteenth birthday, father was either on probation, in foster homes, group homes, juvenile detention centers, county jails or state penitentiaries. During his free periods, there is no evidence of responding to rehabilitation opportunities, but only a pattern of violating probation and a philosophy of wine, women and criminal activities. His psychological history evidenced a personality that gave little hope of quick change or adjusting to responsibility of parenthood, let alone the skills to adequately carry out such duties at the time of the hearing or in the near future.

In addition, father, due to his criminal conduct, found himself in the early stages of a 30–month prison sentence at the time of the dispositional hearing. The sad realities of prison life in our society are such that funds are not provided for intense alcoholic and drug treatment. Nor are there intensive character changing courses or programs that would teach parenting skills.

Faced with such evidence, the trial judge concluded that A.D. needed an atmosphere where love and nurturing could take place now or in the immediate future. Furthermore, he found that father's likelihood of being able to provide that which was in the best interests and the welfare of the child was so very unlikely, that termination of parental rights was in A.D.'s best interest.

The fact of father's incarceration, along with all the other evidence and circumstances of his life, does not leave this court

with a definite and firm conviction that the trial court was mistaken when it terminated father's parental rights. Therefore, this court affirms the judgment of the lower court to terminate father's parental rights as to A.D.

All the Justices concur.

McKEEVER, Circuit Judge, sitting for MORGAN, J., disqualified.