507 N.W.2d 83 (1993)
In the Matter of L.A. and E.A., Alleged Dependent Children.
No. 18116.
Supreme Court of South Dakota.
Considered on Briefs May 25, 1993.
Decided October 20, 1993.
*84 James A. Eirinberg, Sioux Falls, for appellant, W.R., Father.
Mark Barnett, Atty. Gen., Joan P. Baker, Asst. Atty. Gen., Pierre, for appellee, State of S.D.
SABERS, Justice.
Father appeals from a Decree of Disposition terminating his parental rights to his twin daughters. We reverse.

FACTS
Mother gave birth to twin girls E.A. and L.A. on November 22, 1988. Father requested a paternity test in February, 1989 but was advised that a blood test could not be performed at that time due to the age of the children. Shortly after the birth of the children, Mother and Father, who were never married, discontinued living together. Other than the removal of the children by the State and placement in foster care, Mother has had sole custody.
An Amended Petition was filed January 8, 1990 requesting the court to find the children dependent and to terminate the parental rights of Mother and Father. Father was notified in March, 1990 that he had been named as the alleged father of the children. After several phone conversations, paternity remained unresolved and Father was served with a summons and complaint in May, 1990. Father requested a blood test, the results of which indicated a 99.7 percent probability that Father was the father of L.A. and a 99.81 percent probability that he was the father of E.A. Paternity was established in October and Father began visiting the children in December, 1990. He was declared the father of the children on May 8, 1992.
Following a dispositional hearing, the court ordered the transitional return of physical custody in the children to Mother contingent upon specific conditions.[*] Legal custody remained with the Department of Social Services (DSS). Father's parental and custodial *85 rights to the children were terminated and he appeals.

DECISION
We must determine whether the trial court was clearly erroneous in finding by clear and convincing evidence that the termination of Father's parental rights was in the children's best interests as the least restrictive alternative. In re S.W., 428 N.W.2d 521, 525 (S.D.1988). It is established that:
[I]n a termination of parental rights at a dispositional hearing, the trial court must find by clear and convincing evidence that termination of parental rights is in the child's best interest and the state must show that there is no narrower means of providing for the best interests and welfare of the child.
In re Z.Z., 494 N.W.2d 608, 609 (S.D.1992) (citing In re A.D., 416 N.W.2d 264, 267 (S.D. 1987)). "Although the primary focus of the dispositional court is the best interests of the child, the termination of parental rights is a drastic, final step that should be exercised with great caution." In re S.H., 337 N.W.2d 179, 181 (S.D.1983) (citation omitted). Termination must be the least restrictive alternative available, Z.Z., 494 N.W.2d at 609; In re R.H., 349 N.W.2d 65, 67 (S.D.1984), and should be ordered only upon a showing that services to the family are unavailing. In re J.Z., 410 N.W.2d 572, 576 (S.D.1987) (Miller, J., dissenting) (citations omitted), reh'g granted, 423 N.W.2d 813 (S.D.1988); In re M.S.M., 320 N.W.2d 795 (S.D.1982); In re R.Z.F., 284 N.W.2d 879 (S.D.1979).
The trial court's findings of fact cannot be set aside unless they are clearly erroneous and we are, after a review of all the evidence, left with a definite and firm conviction that a mistake has been made. Z.Z., 494 N.W.2d at 610, (quoting In re A.M., 292 N.W.2d 103, 105 (S.D.1980)). A review of the record indicates that the trial court was clearly erroneous and termination of Father's parental rights was not the least restrictive alternative.
According to Findings of Fact XXIV, XXVI, and XXVIII, Father does not relate well to the children and their needs, there is little likelihood that his deficiencies will be remedied, and he is unfit. It is undisputed that both Mother and Father are alcoholics and Father has received treatment for his alcoholism approximately ten times. Father, however, admitted he was an alcoholic at the dispositional hearing and testified that he was attending Alcoholics Anonymous meetings a minimum of twice a week. While testimony was presented alleging abusive behavior on the part of Father, the credibility of the witnesses was called into question and no evidence was presented which indicated that Father had been abusive to either of the children.
As the United States Supreme Court stated in Santosky v. Kramer,
[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State.... If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs.
455 U.S. 745, 753, 102 S.Ct. 1388, 1394-1395, 71 L.Ed.2d 599, 606 (1982). At the time of the dispositional hearing, Father had attempted to stabilize his life in order to provide a secure environment for the children should he be awarded custody. He was working part-time in the construction industry and was planning on attending Mankato State University to pursue an additional degree as well as a post-graduate degree. He had rented a two-bedroom apartment close to campus, taken parenting classes, and investigated support programs available to him in Minnesota and the Mankato area including the YMCA, the Community Educational Service Program and Social Services.
Additionally, clinical psychologist Dr. Bill Arbes (Arbes) testified that Father was highly committed to, and genuinely interested in, the welfare of the children. Arbes stated that Father could, under appropriate conditions, properly parent the children and that there could be a trial placement of the children *86 with the Father for three months without the children suffering permanent harm. Therefore, Findings of Fact XXIV, XXVI, and XXVIII are clearly erroneous.
According to Findings of Fact XXV and XXX, appropriate services to Father have failed, further services would be unavailing, and the least restrictive alternative available required termination of all parental rights of Father. A review of the record, however, indicates that the only "service" offered to Father was visitation of his children, which Father handled responsibly and successfully. According to Michael Sauers, a social worker for Child Protection Services, paternity was established in October, 1990 and Father began exercising his visitation rights in December, 1990. Other than when the children were in Sturgis, South Dakota, Father visited the children at the Child Protection Offices in Brookings and Sioux Falls regularly and took the children to the zoo and the park. Sauers testified that the visitations went very well. The children appeared excited when they saw their father and called him "Dad".
In In re S.M.M., the father's parental rights were terminated, but only after the trial court exhausted all alternatives short of termination. 349 N.W.2d 63, 65 (S.D.1984). Unlike S.M.M., Father has never had custody of the twins. Nor has he "been given the benefit of alternatives short of termination" such as "intensive counseling on child care, parenting skills, parent aid, nutritional aid,... ADC and food stamps," id., and we cannot say that "efforts to assist [him] through the use of social services prove[d] unavailing." Id. In fact, there have not been any efforts on the part of Social Services to assist this Father. Therefore, Findings of Fact XXV and XXX are also clearly erroneous.
After examining all of the evidence, we conclude that less restrictive alternatives to termination exist and that the evidence in support of termination was not sufficiently clear, direct, weighty, and convincing to justify the termination of Father's parental rights. Therefore, we reverse.
WUEST, J., concurs.
HENDERSON and AMUNDSON, JJ., concur specially.
MILLER, C.J., concurs in result.
HENDERSON, Justice (specially concurring).
Certainly, Father has taken the proper steps to straighten out his life for the benefit of the children. I concur with the majority writing that the trial court's Findings of Fact were clearly erroneous and termination of Father's parental rights was not the least restrictive alternative. Matter of C.L., 397 N.W.2d 81 (S.D.1986).
Nevertheless, I am compelled to write because the majority writing attaches most of its decisional authority to Matter of Z.Z., 494 N.W.2d 608 (S.D.1992), a termination of parental rights case which sorely aggrieved the cause of justice. See my dissent therein which was not noted in the majority opinion. The dissent, spiked with authorities, condemning the breakup of families, spawned further proceedings in the Seventh Judicial Circuit of the State of South Dakota, from whence the case did begin and of which I take judicial notice. SDCL 19-10-2. In proceedings supplementary to the decisions of the Supreme Court, involving a battery of social experts in the DSS, lawyers, and reports, the child, Z.Z., remained in the physical custody of grandpa and grandma. A home study was generated through the personal request of Judge Konenkamp, a circuit court judge for the Seventh Judicial Circuit. Ultimately, a stipulation was entered into by the aforesaid lawyers and Department of Social Services, wherein and whereby this little boy was permanently placed with grandpa and grandma for "long-term permanent care" with the DSS to "... monitor ... Z.Z.'s health and welfare." Court Order was entered on April 5, 1993, in Fall River County, situs of the family. As far as this writer is concerned, the beat of the Z.Z. decision by the majority of the Court would appear to go on, via this opinion. However, by the voice of dissent, the drums were muffled. Little Z.Z. remained within the family circle. Notwithstanding the text of the special concurrence of Justice Amundson, records in the *87 Seventh Judicial Circuit post Z.Z. decision in the South Dakota Supreme Court, reveal that the judicial branch of government is still actively involved in this case and that the mother of little Z.Z. does have social contact with him.
In light of the polar positions taken on Z.Z., I decline to support its use.[**] Rather, I base my support of this opinion on the landmark decision of Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), as well as People in the Interest of S.M.M., 349 N.W.2d 63 (S.D.1984); Matter of S.H., 337 N.W.2d 179 (S.D.1983) and Matter of B.E., 287 N.W.2d 91 (S.D.1979).
AMUNDSON, Justice (concurring specially).
I concur with the majority's holding in this case.
I feel a responsibility to respond to the renewed attack on the majority holding of In re Z.Z., 494 N.W.2d 608 (S.D.1992), in the other special writing filed in this case.
The main issue in Z.Z. was whether or not the rights of the natural parent should be terminated by the trial court. The majority of this court found the trial court did not err on that issue.
The second issue in Z.Z. was whether or not the granting of a guardianship to a grandparent was the least restrictive alternative. This issue was moot, since the child was under the Executive Branch's jurisdiction; namely, the Department of Social Services, for placement in view of the termination of the mother's parental rights.
Since the Z.Z. decision was released, I have not had the opportunity to ferret out what transpired in the placement of the minor by DSS. Therefore, I have no reason to disagree with the narrative of what transpired in the placement of the minor after our holding. From the narration, it is obvious that DSS has placed the minor, is monitoring the placement, and has not reinstated the parental rights of the natural parent. Therefore, it is my conclusion that notwithstanding the placement with the grandparents, this court's decision in Z.Z. can appropriately be cited as authority in appellate decisions and certainly should not be characterized as having "sorely aggrieved the cause of justice."
Z.Z. certainly stands as precedent for courts to follow in determining that the best interests of a minor require consideration of whether a parent (not a grandparent) can provide, or will provide, a stable, healthy environment and relationship in the foreseeable future. If that is not the case, a minor does not have to languish in a dysfunctional environment waiting for a parent to acquire the necessary skills which may never be attained.
MILLER, Justice (concurring in result).
I concur with the majority that less restrictive alternatives to termination of Father's parental rights exist. I do not agree that the trial court's Findings of Fact XXIV, XXVI or XXVIII are clearly erroneous. Conflicting evidence on these findings was submitted to the trial court. The record reveals those conflicts were plausibly resolved. As stated by the United States Supreme Court:
If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous.
Anderson v. City of Bessemer City, 470 U.S. 564, 573-74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518, 528 (1985).
I do agree, however, that the trial court's Finding of Fact XXV that "[a]ppropriate services to the Father have failed and further services would be unavailing," is clearly erroneous. The only service provided by DSS to assist Father to keep his children was that of supervised visitation. The success of this service is not contested by these parties. Although it is asserted that "home studies" *88 were also conducted, DSS appears to have done nothing with them. The limited services provided, though successful, have been inadequate and for the trial court to conclude otherwise is clearly erroneous.
Finally, my reading of the record reveals the trial court saw only three alternatives from the very beginning. These were that Mother, Father, or both would have their parental rights terminated. A fourth possibility, that neither parent's rights would be terminated, does not appear to have been considered. Therefore, I agree with the majority that Finding of Fact XXX is also clearly erroneous in that termination is not the least restrictive alternative.
NOTES
[*] Physical custody was granted to Mother contingent upon:

1. Absolute sobriety on the part of the mother;
2. Continued extensive and consistent psychotherapy on the part of the mother, with monthly status reports filed by the mother's counselor(s) with the DSS, until further Order of the Court;
3. Gainful employment or attendance at school on the part the mother; and
4. Quarterly updates from the DSS filed with the Court until further Order of the Court.
[**] It isI wouldthat the reader not only read, but also that he understand.